**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| ADEIA SEMICONDUCTOR BONDING TECHNOLOGIES INC., ADEIA SEMICONDUCTOR INC. & ADEIA SEMICONDUCTOR SOLUTIONS LLC,<br><br>PLAINTIFFS,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>DEFENDANT. | CIVIL ACTION NO.: 7:25-CV-510<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' COMPLAINT FOR PATENT INFRINGEMENT

Adeia Semiconductor Bonding Technologies Inc., Adeia Semiconductor Inc., and Adeia Semiconductor Solutions LLC (collectively, the "Adeia Plaintiffs" or "Plaintiffs") bring this action for patent infringement against Advanced Micro Devices, Inc. ("AMD" or "Defendant"), for infringement of U.S. Patent Nos. 8,389,378 ("the '378 patent"); 10,879,226 ("the '226 patent"); 12,401,010 ("the '010 patent"); 9,564,446 ("the '446 patent"); 11,978,639 ("the '639 patent"); and 10,283,592 ("the '592 patent") (collectively, the "Asserted Patents"). The '378 patent, '226 patent, and '010 patent may be referred to herein as the Hybrid Bonding Patents or HB Patents. The '446 patent, '639 patent, and '592 patent may be referred to herein as the Advanced Process Node Patents or APN Patents. The Adeia Plaintiffs, on personal knowledge as to their own acts, and upon information and belief as to all others based on investigation, allege as follows:

## THE PARTIES

### A. *Adeia*

1.      Plaintiff Adeia Semiconductor Bonding Technologies Inc. ("Adeia Semiconductor Bonding Technologies") is a Delaware corporation with a principal place of business at 3025

Orchard Parkway, San Jose, California 95134.  Adeia Semiconductor Bonding Technologies is a wholly owned subsidiary of Adeia Inc., which is a publicly traded company (ADEA), listed on the NASDAQ.

2.    Plaintiff Adeia Semiconductor Inc. ("Adeia Semiconductor") is a Delaware corporation with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134.  Adeia Semiconductor is a wholly owned subsidiary of Adeia Inc.

3.    Plaintiff Adeia Semiconductor Solutions LLC ("Adeia Semiconductor Solutions") is a Delaware limited liability company with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134.  Adeia Semiconductor Solutions is a wholly owned subsidiary of Adeia Inc.

4.    Adeia Semiconductor Bonding Technologies, Adeia Semiconductor, and Adeia Semiconductor Solutions are collectively referred to herein as the "Adeia Plaintiffs."  Adeia Inc. along with its subsidiaries are referred to herein collectively as "Adeia."

5.    Adeia invents, develops, and licenses fundamental technology enhancing billions of devices in an increasingly connected world and shaping the way millions of people explore and experience entertainment.

6.    Adeia presently owns over 13,000 patents and patent applications worldwide. Adeia's semiconductor patent portfolio covers crucial semiconductor manufacturing technology such as hybrid bonding, advanced process nodes, and advanced packaging.  The Asserted Patents are part of Adeia's semiconductor patent portfolio covering hybrid bonding and advanced process nodes.  Adeia's semiconductor patent portfolio covers fundamental paradigms in the manufacture and design of semiconductor devices, including how those devices are constructed at the smallest scales.

7.      Adeia is at the cutting-edge of innovation in 3D stacked semiconductor chips.[1] Integrated circuits or systems employing stacked die are fundamental to the present and future ability of the semiconductor industry to increase system performance and functionality.  Stacking die allows for an increased density of transistors or storage devices, or for the inclusion of additional functionality.  Stacking die also allows for shorter, higher performance connections between die.  Hybrid bonding fundamentally improves die stacking by enabling an increased areal density of connections between the stacked die.  Hybrid bonding also improves the performance of those connections, which leads to better system performance.  Accordingly, Adeia's innovation has been and will continue to be at the heart of advanced semiconductor devices, including the AMD's products.

8.      Adeia's history of innovation stretches back over 30 years through its predecessor companies Tessera and Tessera's subsidiaries, Invensas and Ziptronix, to name a few.  Over those 30 years, Adeia and its predecessors have repeatedly innovated in semiconductor device and manufacturing technology.  Those innovations have been fundamental to the improvements in 3D semiconductor chips.

9.      Take, for instance, Adeia predecessor Ziptronix.  Beginning in 2000, Ziptronix pioneered the development of innovative low-temperature bonding techniques for semiconductor chips.[2] Ziptronix developed ZiBond®, a direct bonding technology, and Direct Bond Interconnect

---

[1] *See, e.g.*, *DBI Wafer-to-Wafer Hybrid Bonding*, ADEIA, https://adeia.com/dbi-wafer-to-wafer-hybrid-bonding (last visited Oct. 31, 2025); *DBI Ultra Die-to-Wafer Hybrid Bonding*, ADEIA, https://adeia.com/dbi-die-to-wafer-hybrid-bonding (last visited Oct. 31, 2025).
[2] *Tessera to Acquire Ziptronix, Inc. for $39 Million*, XPERI (Aug. 28, 2015), https://investor.xperi.com/news/news-details/2015/Tessera-to-Acquire-Ziptronix-Inc-for-39-Million/default.aspx.

(DBI®), a hybrid bonding technology.[3]  Ziptronix demonstrated its hybrid bonding technologies to others in the semiconductor field.  Now, hybrid bonding is the leading paradigm for stacked chips in advanced semiconductor devices, including AMD's.[4]  One reason for hybrid bonding's importance is its ability to increase density of vertical connections between semiconductor dies in a stacked chip.[5]  Lead innovators at Ziptronix included Qin-Yi Tong, Gaius Gillman Fountain, Jr., and Paul M. Enquist who are recognized as the earliest inventors of direct and hybrid bonding.[6] All three of these inventors are inventors on the '378 Patent and Paul M. Enquist is an inventor on the '226 Patent.

10.    Adeia predecessor Invensas includes a deep bench of technical know-how, including Dr. Belgacem Haba, a prolific inventor in the semiconductor space.[7]  Invensas successfully transferred fundamental technologies to manufacturers to improve MEMS devices and many other electronic devices.[8]

11.    Like its predecessors, Adeia remains committed to technological innovation.  Adeia commits significant capital and resources to research and development.  In 2024 alone, Adeia invested over $60 million in research and development, accounting for over 15 percent of its revenue.  Adeia employs a highly skilled team of 150 professionals, with 80 percent of engineers

---

[3] *See id.*; John H. Lau, *State-of-the-Art and Outlooks of Chiplets Heterogeneous Integration and Hybrid Bonding*, 18 J. MICROELECTRONICS & ELEC. PACKAGING 145, 146, 155 (2021).

[4] *See* Samuel K. Moore, *Hybrid Bonding: 3D Chip Tech to Save Moore's Law*, IEEE SPECTRUM (Aug. 11, 2024), https://spectrum.ieee.org/hybrid-bonding.

[5] *See id.*

[6] Lau, *supra* note 3; U.S. Patent No. 6,902,987 (filed Feb. 16, 2000).

[7] *Xperi Recognizes Master Inventor Dr. Bel Haba for Issuance of 500th U.S. Patent,* XPERI (Sept. 17, 2019), https://investor.xperi.com/news/news-details/2019/Xperi-Recognizes-Master-Inventor-Dr-Bel-Haba-for-Issuance-of-500th-US-Patent/default.aspx.

[8] *Invensas Completes DBI Technology Transfer to Teledyne DALSA*, XPERI (Dec. 14, 2017), https://investor.xperi.com/news/news-details/2017/Invensas-Completes-DBI-Technology-Transfer-to-Teledyne-DALSA/default.aspx.

holding advanced degrees.  For years, Adeia has maintained a research facility that includes clean room space with advanced capabilities and equipment, including wafer fabrication, lithography, plating, and chemical mechanical polishing.  That facility traces its roots back to Ziptronix, who as discussed above was an early innovator in direct and hybrid bonding.  As a result of Adeia's efforts in innovation, it is in the top 75 of all U.S. patent recipients.[9]  In 2024, Adeia was awarded more patents than both Nvidia and AMD.[10]  In the past several years alone, Adeia's inventors have participated in over thirty joint research partnerships with R&D organizations and academic institutions across the globe.  As a result of its longstanding commitment to innovation, Adeia has received numerous accolades for thought leadership and technical excellence in industry conferences and publications.[11]

12.    Beyond Adeia's internal R&D efforts, its patent portfolio has also grown through strategic acquisitions of technology from other leading-edge companies.  For example, Adeia predecessor Tessera acquired patents from Internation Business Machines Corporation ("IBM"), a leading innovator in semiconductor devices and fabrication.[12]  Three of the Asserted Patents derive from Adeia's investment in technology developed by IBM. These investments put Adeia at the cutting-edge of innovation in fin field effect transistors ("FinFET"). Processing nodes from 16nm

---

[9] *Top 300 Organizations Granted U.S. Patents in 2024*, INTELL. PROP. OWNERS ASS'N, (Jan. 15, 2025), https://ipo.org/wp-content/uploads/2025/01/2024-Top-300-Patent-Owners-List.pdf.
[10] *Id*.
[11] *Adeia's Pioneering Hybrid Bonding Technology Continues to Capture Attention*, ADEIA (June 12, 2024), https://investors.adeia.com/news-releases/news-release-details/adeias-pioneering-hybrid-bonding-technology-continues-to-capture.

[12] *See, e.g.*, Jesse Aronstein, *The Forgotten History of How IBM Invented the Automated Fab*, IEEE SPECTRUM (Nov. 27, 2024), https://spectrum.ieee.org/semiconductor-fabrication; Mukesh Khare, *The Future of Computing Requires Advanced Research in Semiconductors Today*, IBM (July 11, 2023), https://research.ibm.com/blog/ibm-semiconductors-research.

down to 3nm are based on the FinFET paradigm.[13]  The evolution from planar transistors to FinFET transistors, and the node-to-node improvements in the density and performance of these FinFETs, has allowed for the continual improvement in performance of die within an integrated circuit or system.

13.    Through its licensing program, Adeia places the many valuable innovations represented in its patent portfolios in the hands of consumers via the products and services offered by its licensing partners.

14.    The identities of the companies who have chosen to become and remain Adeia licensees stand as a testament to the value of the technology Adeia offers.  For example, top U.S. consumer electronics and semiconductor companies have licensed Adeia's semiconductor patent portfolio.[14]

**B.  *AMD***

15.    Defendant Advanced Micro Devices, Inc. is a Delaware corporation with a principal place of business at 2485 Augustine Drive, Santa Clara, California 95054, and doing business in Texas, with offices in Austin, Texas.  AMD has designated the CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 as its agent for service of process.

## JURISDICTION AND VENUE

16.    This action includes claims of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

---

[13] *See* IEEE International Roadmap for Devices and Systems, *Executive Summary 2022*, INST. ELEC. & ELECS. ENG'RS 13, https://irds.ieee.org/images/files/pdf/2022/2022IRDS_ES.pdf (last visited Oct. 31, 2025).
[14] *Licensing Technology from Adeia*, ADEIA, https://adeia.com/licensing (last visited Oct. 31, 2025).

17.     AMD is subject to this Court's personal jurisdiction.

18.     AMD has not disputed this Court's personal jurisdiction over them in recent patent infringement actions filed in this District. *See, e.g., Redstone Logics LLC, v. Advanced Micro Devices, Inc.*, Case No. 7:25-cv-00182-DC-DTG, Dkt. 15 (AMD's Answer) at 4 (W.D. Tex. June 30, 2025); *Advanced Cluster Sys. Inc., v. Advanced Micro Devices, Inc.*, Case No. 7:24-cv-00244-ADA, Dkt. 29 (AMD's Answer) at 2 (W.D. Tex. Jan. 8, 2025).

19.     AMD has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Western District of Texas.

20.     AMD, directly or through subsidiaries or agents, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products within the State of Texas and the Western District of Texas that infringe one or more claims of the Asserted Patents (identified further below as the Accused Products).

21.     AMD has placed or contributed to placing infringing products into the stream of commerce knowing or understanding that such products would be sold and used in the United States, including in this District.

22.     AMD has derived substantial revenues from infringing acts in the Western District of Texas, including from the sale and use of the Accused Products identified below.

23.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

24.     AMD has a regular and established place of business in the Western District of Texas, including at 7171 Southwest Parkway, Austin, Texas 78735; at 7000 West William Cannon Drive, Austin, Texas 78735; and at 1340 Airport Commerce Drive, Austin, Texas 78741.[15]

25.     AMD has represented to investors it has "significant operations" in Austin, Texas.[16]

26.     AMD has admitted in previous patent infringement actions filed against them that venue in this District is proper. *See, e.g., Redstone Logics LLC, v. Advanced Micro Devices, Inc.*, Case No. 7:25-cv-00182-DC-DTG, Dkt. 15 (AMD's Answer) at 4 (W.D. Tex. June 30, 2025); *Advanced Cluster Sys. Inc. v. Advanced Micro Devices, Inc.*, Case No. 7:24-cv-00244-ADA, Dkt. 29 (AMD's Answer) at 2 (W.D. Tex. Jan. 8, 2025).

27.     AMD is also registered to do business in Texas.[17]

28.     AMD has committed acts of infringement in this District.

29.     AMD has employees in Austin, Texas who are responsible for the marketing and sale of products to customers across the country and world.

30.     AMD has employees in Austin, Texas who are responsible for working on the Ryzen™ and Instinct™ product lines, including the MI300X, which is an Accused Product identified below.

31.     AMD has employees in Austin, Texas who are responsible for working on 3D Stacking Technology.

---

[15] *See Corporate Locations*, AMD, https://www.amd.com/en/corporate/locations.html (last visited Oct. 31, 2025) (identifying an AMD location at this address in Austin, Texas, along with other AMD locations in Austin, Texas).

[16] Advanced Micro Devices, Inc., Annual Report (Form 10-K) at 40 (Feb. 5, 2025) (stating "we have significant operations in Austin, Texas").

[17] *See* Advanced Micro Devices, Inc., Filing History (Filing Number 3778306), Office of the Secretary of State of Texas, https://www.sos.state.tx.us/corp/sosda/index.shtml (last visited Oct. 31, 2025) (identifying AMD as a registered business organization in Texas).

32.    Furthermore, "[i]n recent years, AMD has engaged consultants in . . . Texas" "to monitor legislation of interest in state legislatures and support its advocacy efforts."[18]

33.    AMD makes, uses, sells, tests, offers to sell, and/or imports infringing products into and/or within the Western District of Texas, including at its Austin locations.  AMD maintains a permanent and/or continuing presence within the Western District of Texas at its Austin locations, and has the requisite minimum contacts with the Western District of Texas such that this venue is a fair and reasonable one.  Upon information and belief, AMD has transacted and, at the time of the filing of this Complaint, is continuing to transact business within the Western District of Texas.

## FACTUAL BACKGROUND

34.    The Adeia Plaintiffs present their claims and allegations herein in conjunction and/or in the alternative.  To the extent that certain claims or allegations may be inconsistent with one another, such allegations should be understood to be made in the alternative.

### A.    *AMD's Infringing Products*

35.    AMD makes and sells products implementing hybrid-bonded, stacked dies and advanced process nodes.  Many of AMD's advanced processors include its 3D V-Cache™ technology.  The essential feature of 3D V-Cache™ is a memory device, *e.g.*, L3 cache, stacked on/under processor cores (for example, AMD's "Zen5" cores) where the memory and processor cores are hybrid bonded.[19]  In this way, 3D V-Cache™ includes hybrid-bonded, stacked dies.

---

[18]    *Public Policy Engagement and U.S. Political Activities,* AMD, https://www.amd.com/en/corporate/corporate-responsibility/governance/public-policy-engagement.html (last visited Oct. 31, 2025).
[19]    *See AMD 3D V-Cache™ Technology*, AMD, https://www.amd.com/en/products/processors/technologies/3d-v-cache.html (last visited Oct. 31, 2025).

AMD's products containing 3D V-Cache™ infringe one or more of the Asserted Patents, particularly the Hybrid Bonding Patents.

36.     AMD's products may include processor technology embodied in one or more CPU dies, GPU dies, and/or I/O dies.  The CPU dies, GPU dies, and I/O dies may be built according to different technology nodes.  For example, AMD's EPYC™ 9004 series products include 5nm node technology on the CPU die and 6nm node technology on the I/O die.[20]  The Advanced Process Node Patents read on multiple process nodes, including 3nm, 4nm, 5nm, 6nm, and 7nm.  Thus, AMD's products infringe one or more Advanced Process Node Patents.

37.     AMD's products (collectively, the "Accused Products") that infringe one or more of the Asserted Patents (as set forth in more detail below) are processors that AMD classifies as follows: Desktop, Laptop and Workstation Processors; Server Processors, Embedded Processors; Accelerators; Desktop and Laptop Graphics; Workstation and Professional Graphics; and other products.[21]  The Accused Products also include Versal™ Adaptive SoCs.[22]  Each product in the Accused Products may infringe one or more of the Asserted Patents.

38.     One or more of AMD's Server Processors, Processors, Instinct™ MI Accelerators, and Embedded Processors each infringe one or more of the Hybrid Bonding Patents (the "Accused HB Products").  The Accused HB Products include, without limitation to the listed products or exclusion of products released in the future, EPYC™ 7373X, EPYC™ 7473X, EPYC™ 7573X,

---

[20]  *4th Gen AMD EPYC Processor Architecture,* AMD 4 (Sep. 2023), https://www.amd.com/content/dam/amd/en/documents/products/epyc/4th-gen-epyc-processor-architecture-white-paper.pdf.
[21] *AMD Product Specifications*, AMD, https://www.amd.com/en/products/specifications.html (last visited Oct. 31, 2025).
[22] *AMD Versal™ Adaptive SoCs*, AMD, https://www.amd.com/en/products/adaptive-socs-and-fpgas/versal.html (last visited Oct. 31, 2025).

EPYC™ 7773X, EPYC™ 9184X, EPYC™ 9384X, EPYC™ 9684X, Ryzen™ 5 5500X3D, Ryzen™ 5 5600X3D, Ryzen™ 5 7600X3D, Ryzen™ 7 5700X3D, Ryzen™ 7 5800X3D, Ryzen™ 7 7800X3D, Ryzen™ 7 9800X3D, Ryzen™ 9 7900X3D, AMD Ryzen™ 9 7945HX3D, Ryzen™ 9 7950X3D, Ryzen™ 9 9900X3D, Ryzen™ 9 9950X3D, Ryzen™ 9 9955HX3D, Instinct™ MI355X, Instinct™ MI350X, Instinct™ MI325X, Instinct™ MI300X, Instinct™ MI300A, Ryzen™ Embedded 9950X3D, Ryzen™ Embedded 9900X3D, and Ryzen™ Embedded 9800X3D, along with any newly released versions of AMD products employing similar hybrid bonding technologies.

39.    Most of AMD's products include FinFETs made with advanced process nodes, employing FinFETs at the 3nm, 4nm, 5nm, 6nm, and 7nm technology nodes that infringe one or more of the APN Patents (the "Accused APN Products").  The Accused APN Products include dies cut from wafers or wafers containing the infringing features.[23]  The processes used to manufacture the wafer, dies within the wafer, and/or the final products assembled from the wafer infringe one or more of the Asserted Patents.[24]

---

[23] *See* Advanced Micro Devices, Inc., Annual Report (Form 10-K) at 10 (Feb. 5, 2025) (describing AMD's wafer manufacturing arrangements).

[24] The Accused Products include, without limitation to the listed products or exclusion of products released in the future, Radeon™ AI PRO R9700, Radeon™ PRO W7900 Dual Slot, Radeon™ PRO W7900, Radeon™ PRO W7800 48GB, Radeon™ PRO W7800, Radeon™ PRO W7700, Radeon™ PRO W7600, Radeon™ PRO W7500, Radeon™ PRO W7400, Radeon™ PRO W6800, Radeon™ PRO W6600, Radeon™ PRO W6400, Radeon™ PRO W6600M, Radeon™ PRO W6500M, Radeon™ PRO W6300M,Radeon™ Pro VII, Radeon™ Pro W5700, Radeon™ Pro W5500, Radeon™ PRO W5500M (Mobile), Radeon™ PRO V710, Radeon™ PRO V620, Radeon™ PRO V520, Radeon™ RX 9070 XT, Radeon™ RX 9070, Radeon™ RX 9060 XT, Radeon™ RX 9060 XT (8GB), Radeon™ RX 9060, Radeon™ RX 7900 XTX, Radeon™ RX 7900 XT, Radeon™ RX 7900 GRE, Radeon™ RX 7800 XT, Radeon™ RX 7700 XT, Radeon™ RX 7700, Radeon™ RX 7600 XT, Radeon™ RX 7600, Radeon™ RX 7400, Radeon™ RX 7900M, Radeon™ RX 7800M, Radeon™ RX 7600M XT, Radeon™ RX 7600M, Radeon™ RX 7700S, Radeon™ RX 7600S, Radeon™ RX 6950 XT, Radeon™ RX 6900 XT, Radeon™ RX

6800 XT Midnight Black, Radeon™ RX 6800 XT, Radeon™ RX 6800, Radeon™ RX 6750 XT, Radeon™ RX 6700 XT, Radeon™ RX 6700, Radeon™ RX 6650 XT, Radeon™ RX 6600 XT, Radeon™ RX 6600, Radeon™ RX 6500 XT, Radeon™ RX 6500 XT (4GB), Radeon™ RX 6400, Radeon™ RX 6850M XT, Radeon™ RX 6800M, Radeon™ RX 6700M, Radeon™ RX 6650M XT, Radeon™ RX 6650M, Radeon™ RX 6600M, Radeon™ RX 6550M, Radeon™ RX 6500M, Radeon™ RX 6450M, Radeon™ RX 6300M, Radeon™ RX 6800S, Radeon™ RX 6700S, Radeon™ RX 6600S, Radeon™ RX 6550S, Radeon™ RX 5700 XT 50th Anniversary, Radeon™ RX 5700 XT, Radeon™ RX 5700, Radeon™ RX 5600 XT, Radeon™ RX 5600, Radeon™ RX 5500 XT, Radeon™ RX 5500, Radeon™ RX 5300, Radeon™ RX 5700M, Radeon™ RX 5600M, Radeon™ RX 5500M, Radeon™ RX 5300M, Radeon™ VII, Athlon™ Gold 7220C, Athlon™ Gold 7220U, Athlon™ Silver 7120C, Athlon™ Silver 7120U, Ryzen™ 7 7445HS, Ryzen™ 3 210, Ryzen™ 3 3100, Ryzen™ 3 3300X, Ryzen™ 3 4100, Ryzen™ 3 4300G (OEM Only), Ryzen™ 3 4300GE (OEM Only), Ryzen™ 3 4300U, Ryzen™ 3 5125C, Ryzen™ 3 5300G (OEM Only), Ryzen™ 3 5300GE (OEM Only), Ryzen™ 3 5300U, Ryzen™ 3 5305G, Ryzen™ 3 5305GE, Ryzen™ 3 5400U, Ryzen™ 3 5425C, Ryzen™ 3 5425U, Ryzen™ 3 7320C, Ryzen™ 3 7320U, Ryzen™ 3 7330U, Ryzen™ 3 7335U, Ryzen™ 3 7440U, Ryzen™ 3 8300G, Ryzen™ 3 8300GE, Ryzen™ 3 8440U, Ryzen™ 3 PRO 210, Ryzen™ 3 PRO 4350G, Ryzen™ 3 PRO 4350GE, Ryzen™ 3 PRO 4355G, Ryzen™ 3 PRO 4355GE, Ryzen™ 3 PRO 4450U, Ryzen™ 3 PRO 5350G, Ryzen™ 3 PRO 5350GE, Ryzen™ 3 PRO 5355G, Ryzen™ 3 PRO 5355GE, Ryzen™ 3 PRO 5450U, Ryzen™ 3 PRO 5475U, Ryzen™ 3 PRO 7330U, Ryzen™ 3 PRO 7335U, Ryzen™ 3 PRO 8300G, Ryzen™ 3 PRO 8300GE, Ryzen™ 5 220, Ryzen™ 5 230, Ryzen™ 5 240, Ryzen™ 5 3500 Processor (OEM Only), Ryzen™ 5 3600, Ryzen™ 5 3600X, Ryzen™ 5 3600XT, Ryzen™ 5 4500, Ryzen™ 5 4500U, Ryzen™ 5 4600G, Ryzen™ 5 4600GE (OEM Only), Ryzen™ 5 4600H, Ryzen™ 5 4600U, Ryzen™ 5 4680U Microsoft Surface® Edition, Ryzen™ 5 5500, Ryzen™ 5 5500GT, Ryzen™ 5 5500H, Ryzen™ 5 5500U, Ryzen™ 5 5500X3D, Ryzen™ 5 5560U, Ryzen™ 5 5600, Ryzen™ 5 5600F, Ryzen™ 5 5600G, Ryzen™ 5 5600GE, Ryzen™ 5 5600GT, Ryzen™ 5 5600H, Ryzen™ 5 5600HS, Ryzen™ 5 5600T, Ryzen™ 5 5600U, Ryzen™ 5 5600X, Ryzen™ 5 5600X3D, Ryzen™ 5 5600XT, Ryzen™ 5 5605G, Ryzen™ 5 5605GE, Ryzen™ 5 5625C, Ryzen™ 5 5625U, Ryzen™ 5 6600H, Ryzen™ 5 6600HS, Ryzen™ 5 6600U, Ryzen™ 5 7235HS, Ryzen™ 5 7400, Ryzen™ 5 7400F, Ryzen™ 5 7430U, Ryzen™ 5 7500F, Ryzen™ 5 7520C, Ryzen™ 5 7520U, Ryzen™ 5 7530U, Ryzen™ 5 7533HS, Ryzen™ 5 7535HS, Ryzen™ 5 7535U, Ryzen™ 5 7540U, Ryzen™ 5 7545U, Ryzen™ 5 7600, Ryzen™ 5 7600X, Ryzen™ 5 7600X3D, Ryzen™ 5 7640HS, Ryzen™ 5 7640U, Ryzen™ 5 7645HX, Ryzen™ 5 8400F, Ryzen™ 5 8500G, Ryzen™ 5 8500GE, Ryzen™ 5 8540U, Ryzen™ 5 8600G, Ryzen™ 5 8640HS, Ryzen™ 5 8640U, Ryzen™ 5 8645HS, Ryzen™ 5 9500F, Ryzen™ 5 9600, Ryzen™ 5 9600X, Ryzen™ 5 PRO 215, Ryzen™ 5 PRO 220, Ryzen™ 5 PRO 230, Ryzen™ 5 PRO 3600, Ryzen™ 5 PRO 4650G, Ryzen™ 5 PRO 4650GE, Ryzen™ 5 PRO 4650U, Ryzen™ 5 PRO 4655G, Ryzen™ 5 PRO 4655GE, Ryzen™ 5 PRO 5645, Ryzen™ 5 PRO 5650G, Ryzen™ 5 PRO 5650GE, Ryzen™ 5 PRO 5650U, Ryzen™ 5 PRO 5655G, Ryzen™ 5 PRO 5655GE, Ryzen™ 5 PRO 5675U, Ryzen™ 5 PRO 6650H, Ryzen™ 5 PRO 6650HS, Ryzen™ 5 PRO 6650U, Ryzen™ 5 PRO 7445, Ryzen™ 5 PRO 7530U, Ryzen™ 5 PRO 7535U, Ryzen™ 5 PRO 7540U, Ryzen™ 5 PRO 7545U, Ryzen™ 5 PRO 7640HS, Ryzen™ 5 PRO 7640U, Ryzen™ 5 PRO 7645, Ryzen™ 5 PRO 8500G, Ryzen™ 5 PRO 8500GE, Ryzen™ 5 PRO 8540U, Ryzen™ 5 PRO 8600G, Ryzen™ 5 PRO 8600GE, Ryzen™ 5

12

PRO 8640HS, Ryzen™ 5 PRO 8640U, Ryzen™ 5 PRO 8645HS, Ryzen™ 5 PRO 9645, Ryzen™ 7 250, Ryzen™ 7 260, Ryzen™ 7 3700X, Ryzen™ 7 3800X, Ryzen™ 7 3800XT, Ryzen™ 7 4700G (OEM Only), Ryzen™ 7 4700GE (OEM Only), Ryzen™ 7 4700U, Ryzen™ 7 4800H, Ryzen™ 7 4800HS, Ryzen™ 7 4800U, Ryzen™ 7 4980U Microsoft Surface® Edition, Ryzen™ 7 5700, Ryzen™ 7 5700G, Ryzen™ 7 5700GE, Ryzen™ 7 5700U, Ryzen™ 7 5700X, Ryzen™ 7 5700X3D, Ryzen™ 7 5705G, Ryzen™ 7 5705GE, Ryzen™ 7 5800 (OEM Only), Ryzen™ 7 5800H, Ryzen™ 7 5800HS, Ryzen™ 7 5800U, Ryzen™ 7 5800X, Ryzen™ 7 5800X3D, Ryzen™ 7 5800XT, Ryzen™ 7 5825C, Ryzen™ 7 5825U, Ryzen™ 7 6800H, Ryzen™ 7 6800HS, Ryzen™ 7 6800U, Ryzen™ 7 7435HS, Ryzen™ 7 7700, Ryzen™ 7 7700X, Ryzen™ 7 7730U, Ryzen™ 7 7735HS, Ryzen™ 7 7735U, Ryzen™ 7 7736U, Ryzen™ 7 7745HX, Ryzen™ 7 7800X3D, Ryzen™ 7 7840HS, Ryzen™ 7 7840HX, Ryzen™ 7 7840U, Ryzen™ 7 8700F, Ryzen™ 7 8700G, Ryzen™ 7 8745HX, Ryzen™ 7 8840HS, Ryzen™ 7 8840HX, Ryzen™ 7 8840U, Ryzen™ 7 8845HS, Ryzen™ 7 9700F, Ryzen™ 7 9700X, Ryzen™ 7 9800X3D, Ryzen™ 7 PRO 250, Ryzen™ 7 PRO 3700, Ryzen™ 7 PRO 4750G, Ryzen™ 7 PRO 4750GE, Ryzen™ 7 PRO 4750U, Ryzen™ 7 PRO 5750G, Ryzen™ 7 PRO 5750GE, Ryzen™ 7 PRO 5755G, Ryzen™ 7 PRO 5755GE, Ryzen™ 7 PRO 5845, Ryzen™ 7 PRO 5850U, Ryzen™ 7 PRO 5875U, Ryzen™ 7 PRO 6850H, Ryzen™ 7 PRO 6850HS, Ryzen™ 7 PRO 6850U, Ryzen™ 7 PRO 6860Z, Ryzen™ 7 PRO 7730U, Ryzen™ 7 PRO 7735U, Ryzen™ 7 PRO 7745, Ryzen™ 7 PRO 7840HS, Ryzen™ 7 PRO 7840U, Ryzen™ 7 PRO 8700G, Ryzen™ 7 PRO 8700GE, Ryzen™ 7 PRO 8840HS, Ryzen™ 7 PRO 8840U, Ryzen™ 7 PRO 8845HS, Ryzen™ 7 PRO 9745, Ryzen™ 9 270, Ryzen™ 9 3900 Processor (OEM Only), Ryzen™ 9 3900X, Ryzen™ 9 3900XT, Ryzen™ 9 3950X, Ryzen™ 9 4900H, Ryzen™ 9 4900HS, Ryzen™ 9 5900 (OEM Only), Ryzen™ 9 5900HS, Ryzen™ 9 5900HX, Ryzen™ 9 5900X, Ryzen™ 9 5900XT, Ryzen™ 9 5950X, Ryzen™ 9 5980HS, Ryzen™ 9 5980HX, Ryzen™ 9 6900HS, Ryzen™ 9 6900HX, Ryzen™ 9 6980HS, Ryzen™ 9 6980HX, Ryzen™ 9 7845HX, Ryzen™ 9 7900, Ryzen™ 9 7900X, Ryzen™ 9 7900X3D, Ryzen™ 9 7940HS, Ryzen™ 9 7940HX, Ryzen™ 9 7945HX, Ryzen™ 9 7945HX3D, Ryzen™ 9 7950X, Ryzen™ 9 7950X3D, Ryzen™ 9 8940HX, Ryzen™ 9 8945HS, Ryzen™ 9 8945HX, Ryzen™ 9 9850HX, Ryzen™ 9 9900X, Ryzen™ 9 9900X3D, Ryzen™ 9 9950X, Ryzen™ 9 9950X3D, Ryzen™ 9 9955HX, Ryzen™ 9 9955HX3D, Ryzen™ 9 PRO 3900, Ryzen™ 9 PRO 5945, Ryzen™ 9 PRO 6950H, Ryzen™ 9 PRO 6950HS, Ryzen™ 9 PRO 7940HS, Ryzen™ 9 PRO 7945, Ryzen™ 9 PRO 8945HS, Ryzen™ 9 PRO 9945, Ryzen™ AI 5 330, Ryzen™ AI 5 340, Ryzen™ AI 5 PRO 340, Ryzen™ AI 7 350, Ryzen™ AI 7 PRO 350, Ryzen™ AI 7 360, Ryzen™ AI 9 365, Ryzen™ AI 9 HX 370, Ryzen™ AI 9 HX 375, Ryzen™ AI 9 HX PRO 370, Ryzen™ AI 9 HX PRO 375, Ryzen™ AI Max 385, Ryzen™ AI Max 390, Ryzen™ AI Max PRO 380, Ryzen™ AI Max PRO 385, Ryzen™ AI Max PRO 390, Ryzen™ AI Max+ 395, Ryzen™ AI Max+ PRO 395, Ryzen™ AI Z2 Extreme, Ryzen™ Threadripper™ 3960X, Ryzen™ Threadripper™ 3970X, Ryzen™ Threadripper™ 3990X, Ryzen™ Threadripper™ 7960X, Ryzen™ Threadripper™ 7970X, Ryzen™ Threadripper™ 7980X, Ryzen™ Threadripper™ 9960X, Ryzen™ Threadripper™ 9970X, Ryzen™ Threadripper™ 9980X, Ryzen™ Threadripper™ PRO 3945WX, Ryzen™ Threadripper™ PRO 3955WX, Ryzen™ Threadripper™ PRO 3975WX, Ryzen™ Threadripper™ PRO 3995WX, Ryzen™ Threadripper™ PRO 5945WX, Ryzen™ Threadripper™ PRO 5955WX, Ryzen™ Threadripper™ PRO 5965WX, Ryzen™ Threadripper™ PRO 5975WX, Ryzen™ Threadripper™ PRO 5995WX, Ryzen™ Threadripper™ PRO 7945WX, Ryzen™

Threadripper™ PRO 7955WX, Ryzen™ Threadripper™ PRO 7965WX, Ryzen™ Threadripper™ PRO 7975WX, Ryzen™ Threadripper™ PRO 7985WX, Ryzen™ Threadripper™ PRO 7995WX, Ryzen™ Threadripper™ PRO 9945WX, Ryzen™ Threadripper™ PRO 9955WX, Ryzen™ Threadripper™ PRO 9965WX, Ryzen™ Threadripper™ PRO 9975WX, Ryzen™ Threadripper™ PRO 9985WX, Ryzen™ Threadripper™ PRO 9995WX, Ryzen™ Z1, Ryzen™ Z1 Extreme, Ryzen™ Z2, Ryzen™ Z2 A, Ryzen™ Z2 Extreme, Ryzen™ Z2 Go, EPYC™ 4124P, EPYC™ 4244P, EPYC™ 4344P, EPYC™ 4364P, EPYC™ 4464P, EPYC™ 4484PX, EPYC™ 4564P, EPYC™ 4584PX, EPYC™ 4245P, EPYC™ 4345P, EPYC™ 4465P, EPYC™ 4545P, EPYC™ 4565P, EPYC™ 4585PX, EPYC™ 7232P, EPYC™ 7252, EPYC™ 7262, EPYC™ 7272, EPYC™ 7282, EPYC™ 7302, EPYC™ 7302P, EPYC™ 7352, EPYC™ 7402, EPYC™ 7402P, EPYC™ 7452, EPYC™ 7502, EPYC™ 7502P, EPYC™ 7532, EPYC™ 7542, EPYC™ 7552, EPYC™ 7642, EPYC™ 7662, EPYC™ 7702, EPYC™ 7702P, EPYC™ 7742, EPYC™ 7F32, EPYC™ 7F52, EPYC™ 7F72, EPYC™ 7H12, EPYC™ 7203, EPYC™ 7203P, EPYC™ 72F3, EPYC™ 7303, EPYC™ 7303P, EPYC™ 7313, EPYC™ 7313P, EPYC™ 7343, EPYC™ 7373X, EPYC™ 73F3, EPYC™ 7413, EPYC™ 7443, EPYC™ 7443P, EPYC™ 7453, EPYC™ 7473X, EPYC™ 74F3, EPYC™ 7513, EPYC™ 7543, EPYC™ 7543P, EPYC™ 7573X, EPYC™ 75F3, EPYC™ 7643, EPYC™ 7643P, EPYC™ 7663, EPYC™ 7663P, EPYC™ 7713, EPYC™ 7713P, EPYC™ 7763, EPYC™ 7773X, EPYC™ 8024P, EPYC™ 8024PN, EPYC™ 8124P, EPYC™ 8124PN, EPYC™ 8224P, EPYC™ 8224PN, EPYC™ 8324P, EPYC™ 8324PN, EPYC™ 8434P, EPYC™ 8434PN, EPYC™ 8534P, EPYC™ 8534PN, EPYC™ 9124, EPYC™ 9174F, EPYC™ 9184X, EPYC™ 9224, EPYC™ 9254, EPYC™ 9274F, EPYC™ 9334, EPYC™ 9354, EPYC™ 9354P, EPYC™ 9374F, EPYC™ 9384X, EPYC™ 9454, EPYC™ 9454P, EPYC™ 9474F, EPYC™ 9534, EPYC™ 9554, EPYC™ 9554P, EPYC™ 9634, EPYC™ 9654, EPYC™ 9654P, EPYC™ 9684X, EPYC™ 9734, EPYC™ 9754, EPYC™ 9754S, EPYC™ 9015, EPYC™ 9115, EPYC™ 9135, EPYC™ 9175F, EPYC™ 9255, EPYC™ 9275F, EPYC™ 9335, EPYC™ 9355, EPYC™ 9355P, EPYC™ 9365, EPYC™ 9375F, EPYC™ 9455, EPYC™ 9455P, EPYC™ 9475F, EPYC™ 9535, EPYC™ 9555, EPYC™ 9555P, EPYC™ 9565, EPYC™ 9575F, EPYC™ 9645, EPYC™ 9655, EPYC™ 9655P, EPYC™ 9745, EPYC™ 9755, EPYC™ 9825, EPYC™ 9845, EPYC™ 9965, EPYC™ Embedded 4585PX, EPYC™ Embedded 4565P, EPYC™ Embedded 4545P, EPYC™ Embedded 4465P, EPYC™ Embedded 4345P, EPYC™ Embedded 4245P, EPYC™ Embedded 7742, EPYC™ Embedded 7662, EPYC™ Embedded 7642, EPYC™ Embedded 7552, EPYC™ Embedded 7542, EPYC™ Embedded 7502P, EPYC™ Embedded 7502, EPYC™ Embedded 7452, EPYC™ Embedded 7402P, EPYC™ Embedded 7402, EPYC™ Embedded 7352, EPYC™ Embedded 7302P, EPYC™ Embedded 7302, EPYC™ Embedded 7282, EPYC™ Embedded 7272, EPYC™ Embedded 7262, EPYC™ Embedded 7252, EPYC™ Embedded 7232P, EPYC™ Embedded 7713P, EPYC™ Embedded 7713, EPYC™ Embedded 7643, EPYC™ Embedded 7543P, EPYC™ Embedded 7543, EPYC™ Embedded 7443P, EPYC™ Embedded 7443, EPYC™ Embedded 7413, EPYC™ Embedded 7313P, EPYC™ Embedded 7313, EPYC™ Embedded 8534P, EPYC™ Embedded 8434P, EPYC™ Embedded 8324P, EPYC™ Embedded 8224P, EPYC™ Embedded 8124P, EPYC™ Embedded 8C24P, EPYC™ Embedded 9654P, EPYC™ Embedded 9654, EPYC™ Embedded 9554P, EPYC™ Embedded 9554, EPYC™ Embedded 9534, EPYC™ Embedded 9454P, EPYC™ Embedded 9454, EPYC™ Embedded 9354P, EPYC™ Embedded 9354, EPYC™ Embedded 9254, EPYC™ Embedded 9124, EPYC™ Embedded 9965,

### B. *AMD's Vicarious Liability*

40.    AMD's subsidiaries are agents of AMD.

41.    AMD directs and controls the actions and performance of its AMD subsidiaries, including those related to infringement of the Asserted Patents.

42.    AMD authorizes the actions and performance of its AMD subsidiaries, including those related to infringement of the Asserted Patents.

43.    AMD approves the actions and performance of its AMD subsidiaries, including those related to infringement of the Asserted Patents.

44.    AMD conditions benefits derived by its AMD subsidiaries on the performance of activities, including those related to infringement of the Asserted Patents.

45.    AMD specifies the timing and manner of the performance of activities by its AMD subsidiaries, including those related to infringement of the Asserted Patents.

46.    AMD profits from the activities of its AMD subsidiaries.

---

EPYC™ Embedded 9845, EPYC™ Embedded 9755, EPYC™ Embedded 9745, EPYC™ Embedded 9655P, EPYC™ Embedded 9655, EPYC™ Embedded 9555P, EPYC™ Embedded 9555, EPYC™ Embedded 9535, EPYC™ Embedded 9455P, EPYC™ Embedded 9455, EPYC™ Embedded 9355P, EPYC™ Embedded 9355, EPYC™ Embedded 9335, EPYC™ Embedded 9255, EPYC™ Embedded 9135, EPYC™ Embedded 9015, Ryzen™ Embedded 8845HS, Ryzen™ Embedded 8840U, Ryzen™ Embedded 8645HS, Ryzen™ Embedded 8640U, Ryzen™ Embedded 5950E Processor, Ryzen™ Embedded 5900E Processor, Ryzen™ Embedded 5800E Processor, Ryzen™ Embedded 5600E Processor, Ryzen™ Embedded 7945, Ryzen™ Embedded 7745, Ryzen™ Embedded 7700X, Ryzen™ Embedded 7645, Ryzen™ Embedded 7600X, Ryzen™ Embedded V2A46 with Radeon™ Graphics, Ryzen™ Embedded V2748 with Radeon™ Graphics, Ryzen™ Embedded V2718 with Radeon™ Graphics, Ryzen™ Embedded V2546 with Radeon™ Graphics, Ryzen™ Embedded V2516 with Radeon™ Graphics, Ryzen™ Embedded V3C48, Ryzen™ Embedded V3C44, Ryzen™ Embedded V3C18I, Ryzen™ Embedded V3C16, Ryzen™ Embedded V3C14, Instinct™ MI355X, Instinct™ MI350X, Instinct™ MI325X, Instinct™ MI300X, Instinct™ MI300A, Instinct™ MI250X, Instinct™ MI250, Instinct™ MI210, Instinct™ MI100, Instinct™ MI60, Instinct™ MI50 (32GB), and Instinct™ MI50 (16GB), along with any newly released versions of AMD products employing these advanced process nodes.

47.    AMD has the rights, powers, or abilities to cause its AMD subsidiaries to stop or limit their infringing activities.

48.    AMD has not exercised its rights, powers, or abilities to cause its AMD subsidiaries to stop or limit their infringing activities.

49.    AMD is vicariously liable for the infringing activities of its AMD subsidiaries.

50.    AMD has foundry arrangements with TSMC for the production of wafers for AMD's HPC, FPGA, and Adaptive SoC products. AMD is also a party to a Wafer Supply Agreement (WSA) with GLOBALFOUNDRIES Inc. (GF), with respect to wafer purchases for AMD's HPC products at the 12 nm and 14 nm technology nodes. Additionally, AMD utilizes TSMC, United Microelectronics Corporation (UMC), and Samsung Electronics Co., Ltd. for the production of its integrated circuits (IC) in the form of programmable logic devices. (Collectively, these will be referred to as Wafer Foundry Facilities.)

51.    Wafers for AMD's products are either sorted by the foundry or delivered by the foundry to AMD's assembly, test, mark, and packaging (ATMP) partners or subcontractors located in the Asia-Pacific region who package and test AMD's final semiconductor products. AMD is party to two ATMP joint ventures (collectively, the ATMP JVs) with Tongfu Microelectronics Co., Ltd. The ATMP JVs, Siliconware Precision Industries Ltd. (SPIL) and King Yuan Electronics Company (KYEC) provide ATMP services for AMD's products. (Collectively, these will be referred to as ATMP Facilities.)

52.    AMD also works with shipping partners and distributors to import the Accused Products into the United States for and/or on behalf of AMD or its customers, including in circumstances where AMD is not listed as the importer of record. (Collectively, these will be referred to as Shipping Facilities.)

53.     AMD's Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities are agents of AMD.

54.     AMD directs and controls the actions and performance of the Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

55.     AMD authorizes the actions and performance of the Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

56.     AMD approves the actions and performance of the Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

57.     AMD conditions benefits derived by the Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities on the performance of activities, including those related to infringement of the Asserted Patents.

58.     AMD specifies the timing and manner of the performance of activities by Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

59.     AMD profits from the activities of Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities.

60.     AMD has the rights, powers, or abilities to cause Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities to stop or limit their infringing activities.

61.     AMD has not exercised its rights, powers, or abilities to cause Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities to stop or limit their infringing activities.

62.    AMD is vicariously liable for the infringing activities of Wafer Foundry Facilities, ATMP Facilities, and Shipping Facilities.

63.    AMD authorizes the actions and performance of its customers, including those related to infringement of the Asserted Patents.

64.    AMD approves the actions and performance of its customers, including those related to infringement of the Asserted Patents.

65.    AMD conditions benefits derived by AMD customers on the performance of activities, including those related to infringement of the Asserted Patents.

66.    AMD specifies the timing and manner of the performance of activities by AMD customers, including those related to infringement of the Asserted Patents.

67.    AMD profits from the activities of AMD customers.

68.    AMD has the rights, powers, or abilities to cause AMD customers to stop or limit their infringing activities.

69.    AMD has not exercised its rights, powers, or abilities to cause AMD customers to stop or limit their infringing activities.

70.    AMD is vicariously liable for the infringing activities of AMD customers.

**COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 8,389,378**

71.    Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

72.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Plaintiffs reserve the right to modify this description, including, for example, on the basis of information about the Accused Products that they obtain during discovery.

73.     The '378 patent, entitled "3D IC Method and Device," issued on March 5, 2013, and names Paul M. Enquist, Gaius Gillman Fountain, Jr., and Qin-Yi Tong as inventors.  The '378 patent is attached as Exhibit A.

74.     Adeia Semiconductor Bonding Technologies Inc. owns all rights, title, and interest in the '378 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

75.     The '378 patent is valid, enforceable, and directed to patentable subject matter.

76.     The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '378 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '378 patent.

77.     AMD has infringed and continues to infringe one or more claims of the '378 patent by making, using, selling and/or offering to sell Accused HB Products in this District and elsewhere in the United States, and/or importing Accused HB Products into this District and elsewhere in the United States.

78.     The Accused HB Products are made and continue to be made by a process patented in one or more claims of the '378 patent during the term of the patent.  The Accused HB Products are not materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

79.     Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused HB Products.

80.     Claim 1 of the '378 patent recites: "A method of integrating a first element having a first contact structure with a second element having a second contact structure, comprising." To the extent that this preamble is limiting, the Accused HB Products are made in accordance with this element.

81.     The AMD EPYC™ 9684X is an Accused HB Products. It is constructed by integrating a first element having one or more copper contact structures with a second element having one or more copper contact structures. Two exemplary elements are shown below, bonded together.



Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, TOM'S HARDWARE (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips.

82.     Claim 1 of the '378 patent recites: "forming a via in said first element." The Accused HB Products are made in accordance with this element.

83.     The AMD EPYC™ 9684X is constructed by forming a via in the first element.



Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, Tom's Hardware (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips.

84.    Claim 1 of the '378 patent recites: "connecting said first conductive material to said first contact structure."  The Accused HB Products are made in accordance with this element.

85.    The AMD EPYC™ 9684X is constructed by connecting the first conductive material, such as copper, in the via to a corresponding copper contact structure.



Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, Tom's Hardware (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips.

86.    Claim 1 of the '378 patent recites: "removing a portion of said first element to expose said first conductive material in said via."  The Accused HB Products are made in accordance with this element.

87.    The AMD EPYC™ 9684X is constructed by removing a portion of the first element to expose the conductive material, such as copper, in the via.



Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, TOM'S HARDWARE (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips.

88.    Claim 1 of the '378 patent recites: "bonding said first element to said second element such that one of said first contact structure and said first conductive material is directly connected to said second contact structure."  The Accused HB Products are made in accordance with this element.

89.    The AMD EPYC™ 9684X is constructed by bonding the first element to the second element such that a copper contact structure of the first element is directly connected to a corresponding copper contact structure of the second element.

22



Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, TOM'S HARDWARE (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips.

90.    Claim 1 of the '378 patent recites: "wherein said via and said first conductive material are formed before forming said first contact structure." The Accused HB Products are made in accordance with this element.

91.    The AMD EPYC™ 9684X is constructed by forming the via and filling it with first conductive material before forming the corresponding copper contact structure on the filled via.

23



Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, Tom's Hardware (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips.

92.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '378 patent, which is a process patent, based on the importation, sale, offer for sale, or use of the Accused HB Products which are made and continue to be made from the '378 patent's processes patented in the United States and a substantial likelihood exists that the Accused HB Products were made and continue to be made by the '378 patent's patented processes.

93.    In addition or in the alternative, AMD has directed or controlled and continues to direct or control the manufacturing process and/or importation by Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and/or other parties for the Accused HB Products.  AMD is therefore vicariously liable for these actions. Moreover, based on this direction and control, AMD is also not entitled to the modifications of remedies provided in 35 U.S.C. § 287 based on its (or entities it directs or controls) infringement under 35 U.S.C. § 271(g).

94.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '378 patent under 35 U.S.C. §§ 271(a) and/or (g).

95.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '378 patent under 35 U.S.C. § 271(b).

96.    AMD had knowledge of the '378 patent since at least the filing of this Complaint.

97.    Alternatively, AMD took and continues to take the above actions intending to cause infringing acts by others, and/or willfully blinded itself as to the existence of the Asserted Patent and the Accused HB Products' infringement thereof.

98.    AMD has induced third parties and continues to induce third parties, such as the Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and AMD customers, to make, use, sell, offer for sale, or import into the United States the Accused HB Products.

99.    AMD's agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused HB Products contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused HB Products.

100.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '378 patent under 35 U.S.C. § 271(b).

101.    AMD's infringement of the '378 patent has been willful and egregious and continues to be willful and egregious.

102.    AMD's acts of infringement have caused and continue to cause damage to Plaintiffs.  Plaintiffs are entitled to recover from AMD the damages sustained by Plaintiffs as a result of these wrongful acts in an amount subject to proof at trial.

## COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 10,879,226

103.    Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein

104.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Plaintiffs reserve the right to modify this description, including, for example, on the basis of information about the Accused Products that they obtain during discovery.

105.    The '226 patent, entitled "Stacked Dies and Methods For Forming Bonded Structures," issued on December 29, 2020, and names Cyprian Emeka Uzoh, Arkalgud R. Sitaram, and Paul Enquist as inventors.  The '226 patent is attached as Exhibit B.

106.    Adeia Semiconductor Bonding Technologies Inc. owns all rights, title, and interest in the '226 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

107.    The '226 patent is valid, enforceable, and directed to patentable subject matter.

108.    The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '226 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '226 patent.

109.    AMD has infringed and continues to infringe one or more claims of the '226 patent by making, using, selling and/or offering to sell Accused HB Products in this District and elsewhere in the United States, and/or importing Accused HB Products into this District and elsewhere in the United States.

110.    The Accused HB Products are made and continue to be made by a process patented in one or more claims of the '226 patent during the term of the patent.  The Accused HB Products

are not materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

111.    Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product. Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused HB Products.

112.    Claim 1 of the '226 patent recites: "A method for packaging integrated device dies, the method comprising." To the extent that this preamble is limiting, the Accused HB Products are made in accordance with this element.

113.    The AMD MI300A is an Accused HB Product. It is construed by packaging integrated device dies.



Source: *Data Sheet: AMD Instinct™ MI300A*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/data-sheets/amd-instinct-mi300a-data-sheet.pdf (last visited Oct. 31, 2025).



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HotHardware (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, Inst. Elec. & Elecs. Eng'rs (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.

> The AMD CDNA™ 3 architecture continues to lead this evolution, as the AMD accelerated computing strategy embraces advanced packaging to enable heterogeneous integration. This strategy delivers outstanding performance, changing the computing paradigm with a coherent programming model that tightly couples CPUs and GPUs together to tackle the most demanding problems of our era. The AMD CDNA™ 3 architecture offers significant advancements and delivers the highest performance, efficiency, and programmability to date in the latest AMD Instinct MI300 Series products.



Figure 1. Advanced 3D Package and chiplet-based construction of the AMD Instinct™ MI300 Series processors

Source: *AMD CDNA™ 3 Architecture*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/white-papers/amd-cdna-3-white-paper.pdf (last visited Oct. 31, 2025).

114.    Claim 1 of the '226 patent recites: "directly bonding a plurality of singulated integrated device dies to a carrier such that respective bonding surfaces of the plurality of singulated integrated device dies and the carrier are in direct contact, the plurality of singulated integrated device dies comprising a first singulated device die."  The Accused HB Products are made in accordance with this element.

115.    The AMD MI300A is constructed by directly bonding a plurality of singulated integrated device dies to a carrier such that their respective bonding surfaces are in direct contact in order to form a first layer of device dies.



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.

116.    Claim 1 of the '226 patent recites: "after directly bonding, thinning the plurality of singulated integrated device dies."  The Accused HB Products are made in accordance with this element.

117.    The AMD MI300A is constructed by, after directly bonding, thinning the plurality

of singulated integrated device dies.[25]



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, Inst. Elec. & Elecs. Eng'rs (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.

---

[25] *See also* AMD, *How It's Built: AMD 3D V-Cache Technology*, YouTube (Mar. 29, 2022), https://www.youtube.com/watch?v=dSCpVhKvmCY (at 03:12–03:46) ("So another thing we can do is—it's called die thinning. So we're going to take that same Zen 3 die and grind it down to an incredible layer of thinness. And notice, you can see the relative size; it's much thinner in the vertical dimension or in the z-height. And then, when we stack 3D V-Cache on top, the important thing to note is that the overall size of this die—the real Zen 3 die; the original—and this guy; same height.").



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HotHardware (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

118.    Claim 1 of the '226 patent recites: "providing a protective material on exposed surfaces of the plurality singulated integrated device dies including sidewall surfaces of the plurality of singulated integrated device dies."  The Accused HB Products are made in accordance with this element.

119.    The AMD MI300A is constructed by providing a protective material on exposed surfaces (including sidewall surfaces) of the plurality of singulated integrated device dies.



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, Inst. Elec. & Elecs. Eng'rs (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

120.    Claim 1 of the '226 patent recites: "and after providing the protective material, directly bonding a second singulated integrated device die to the first singulated device die." The Accused HB Products are made in accordance with this element.

121.    The AMD MI300A is constructed by, after providing the protective material, directly bonding a second singulated integrated device die to the first singulated device die.[26]

---

[26] *See also* AMD, *How It's Built: AMD 3D V-Cache Technology*, YOUTUBE (Mar. 29, 2022), https://www.youtube.com/watch?v=dSCpVhKvmCY (at 04:48–5:37) ("If you have two surfaces that are perfectly flat and smooth—we're talking molecular perfection—and you bring them together, those surfaces will actually bond together to form a single, cohesive unit. . . . This force deals with very small molecular objects, and that's the force we're using to keep this together. There's no wires, rivets, glue that keeps the chip as a single unit. It is that same physical force— the one that keeps you together, keeps this chip together. And that is one of the many reasons why AMD 3D V-Cache technology or Hybrid Bond 3D is truly scientifically amazing.").



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, Inst. Elec. & Elecs. Eng'rs (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.





Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

122.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '226 patent, which is, in part, a process patent, based on the importation, sale, offer for sale, or use of the Accused HB Products which are made and continue to be made from the

'226 patent's processes patented in the United States and a substantial likelihood exists that the Accused HB Products were made and continue to be made by the '226 patent's patented processes.

123.    In addition or in the alternative, AMD has directed or controlled and continues to direct or control the manufacturing process and/or importation by Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and/or other parties for the Accused HB Products.  AMD is therefore vicariously liable for these actions. Moreover, based on this direction and control, AMD is also not entitled to the modifications of remedies provided in 35 U.S.C. § 287 based on its (or entities it directs or controls) infringement under 35 U.S.C. § 271(g).

124.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '226 patent under 35 U.S.C. §§ 271(a) and/or (g).

125.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '226 patent under 35 U.S.C. § 271(b).

126.    AMD had knowledge of the '226 patent since at least the filing of this Complaint.

127.    Alternatively, AMD took and continues to take the above actions intending to cause infringing acts by others, and/or willfully blinded itself as to the existence of the Asserted Patent and the Accused HB Products' infringement thereof.

128.    AMD has induced third parties and continues to induce third parties, such as the Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and AMD customers, to make, use, sell, offer for sale, or import into the United States the Accused HB Products.

129.    AMD's agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused HB Products contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on,

influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused HB Products.

130.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '226 patent under 35 U.S.C. § 271(b).

131.    AMD's infringement of the '226 patent has been willful and egregious and continues to be willful and egregious.

132.    AMD's acts of infringement have caused and continue to cause damage to Plaintiffs.  Plaintiffs are entitled to recover from AMD the damages sustained by Plaintiffs as a result of these wrongful acts in an amount subject to proof at trial.

## COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 12,401,010

133.    Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein

134.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Plaintiffs reserve the right to modify this description, including, for example, on the basis of information about the Accused Products that they obtain during discovery.

135.    The '010 patent, entitled "3D Processor Having Stacked Integrated Circuit Die," issued on August 26, 2025, and names Steven L. Teig, Ilyas Mohammed, Kenneth Duong, and Javier DeLaCruz as inventors.  The '010 patent is attached as Exhibit C.

136.    Adeia Semiconductor Inc. owns all rights, title, and interest in the '010 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

137.    The '010 patent is valid, enforceable, and directed to patentable subject matter.

138.    Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '010 patent.

139.    AMD has infringed and continues to infringe one or more claims of the '010 patent by making, using, selling and/or offering to sell Accused HB Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

140.    Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused HB Products.

141.    Claim 1 of the '010 patent recites: "A three dimensional (3D) processor circuit, comprising."  To the extent the preamble is limiting, the AMD HB Products comprise this element.

142.    The AMD MI300A is an Accused HB Product.  The AMD MI300A comprises a three dimensional processor circuit.



Source: *Data Sheet: AMD Instinct™ MI300A*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/data-sheets/amd-instinct-mi300a-data-sheet.pdf (last visited Oct. 31, 2025).



Source: *AMD CDNA™ 3 Architecture*, AMD,
https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/white-papers/amd-cdna-3-white-paper.pdf (last visited Oct. 31, 2025).

143.    Claim 1 of the '010 patent recites: "a first integrated circuit (IC) die comprising a first processor core."  The AMD HB Products comprise this element.

144.    The AMD MI300A comprises a first integrated circuit die comprising a processor core.



Source: *Data Sheet: AMD Instinct™ MI300A*, AMD,
https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/data-sheets/amd-instinct-mi300a-data-sheet.pdf (last visited Oct. 31, 2025).

41



Figure 1. Advanced 3D Package and chiplet-based construction of the AMD Instinct™ MI300 Series processors

Table 2. AMD Instinct™ MI300 Series accelerators specifications and features

| ARCHITECTURE | AMD Instinct MI300A APU | AMD Instinct MI300X GPU | AMD Instinct MI325X GPU |
|---|---|---|---|
| | AMD CDNA 3 | AMD CDNA 3 | AMD CDNA 3 |
| ACCELERATED COMPLEX DIES (XCD) | 6 | 8 | 8 |
| COMPUTE UNITS | 228 | 304 | 304 |
| STREAM PROCESSORS | 14,592 | 19,456 | 19,456 |
| MATRIX CORES | 912 | 1,216 | 1,216 |
| MAX ENGINE CLOCK (PEAK) | 2,100 MHz | 2,100 MHz | 2,100 MHz |
| AMD "ZEN 4" CPU CHIPLETS (CCD) | 3 | NA | NA |
| TOTAL "ZEN 4" X86 CORES | 24 | NA | NA |

Source: *AMD CDNA™ 3 Architecture*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/white-papers/amd-cdna-3-white-paper.pdf (last visited Oct. 31, 2025).



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

145.    Claim 1 of the '010 patent recites: "and a second IC die vertically mounted on the first IC die, the second IC die comprising a first cache for the first processor core."  The AMD HB Products comprise this element.

146.    The AMD MI300A comprises a second integrated circuit die vertically mounted on the first integrated circuit die, the second integrated circuit die comprising a first cache for the first processor core.

43

Heterogeneous integration enables the AMD CDNA 3 architecture to incorporate a substantial amount of silicon dedicated to the memory hierarchy. The IODs are manufactured on TSMC's 6nm process and vertically stacked beneath a pair of XCDs. They contain a brand new AMD Infinity Cache and the HBM3 interface to the on-package memory and are connected to the rest of the system by the AMD Infinity Fabric network.



Figure 6. AMD CDNA™ 3 architecture memory architecture diagram

For the Instinct MI300A APU, the on-package integration of CPU cores and unified memory is even more transformative. In the previous generation, the AMD EPYC™ processor and the Instinct MI250X GPU connected via two AMD Infinity Fabric links with 144GB/s throughput and package-to-package latency between the two devices and their associated memories. On the Instinct MI300A APU, the on-package AMD Infinity Fabric connects both the accelerator complex dies (XCDs), and the CPU complex dies (CCDs) directly into the shared Infinity Cache and 8-stack of HBM3 at chiplet latency and interface throughput.

Source: *AMD CDNA™ 3 Architecture*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/white-papers/amd-cdna-3-white-paper.pdf (last visited Oct. 31, 2025).



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.





Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

147. Claim 1 of the '010 patent recites: "wherein the first cache vertically overlaps with at least a portion of the first processor core at an overlapping area." The AMD HB Products comprise this element.

148. The AMD MI300A comprises the first cache vertically overlaps with at least a portion of the first processor core at an overlapping area.



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.



Source: *AMD CDNA™ 3 Architecture*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/white-papers/amd-cdna-3-white-paper.pdf (last visited Oct. 31, 2025).



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

149.    Claim 1 of the '010 patent recites: "and wherein the first IC die is communicatively coupled with the second IC die through a hybrid bond comprising a plurality of directly bonded metal contact pads and directly bonded non-conductive regions."   The AMD HB Products comprise this element.

150.    The AMD MI300A comprises the first integrated circuit die communicatively coupled with the second integrated circuit die through a hybrid bond comprising a plurality of directly bonded metal contact pads and directly bonded non-conductive regions.



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

151.    Claim 1 of the '010 patent recites: "and wherein the first processor core is electrically connected to the first cache through at least one of the plurality of directly bonded metal contact pads disposed within the overlapping area."  The AMD HB Products comprise this element.

152.    The AMD MI300A product comprises the first processor core electrically connected to the first cache through at least one of the plurality of directly bonded metal contact pads disposed within the overlapping area.



Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.



Source: *AMD CDNA™ 3 Architecture*, AMD, https://www.amd.com/content/dam/amd/en/documents/instinct-tech-docs/white-papers/amd-cdna-3-white-paper.pdf (last visited Oct. 31, 2025).



Source: Marco Chiappetta, *AMD Instinct MI300 Series Architecture Deep Dive Reveal: Advancing AI And HPC*, HOTHARDWARE (Dec. 6, 2023 at 15:00 EDT), https://hothardware.com/reviews/amd-instinct-mi300-family-architecture-advancing-ai-and-hpc.

153.    In addition or in the alternative, AMD has directed or controlled and continues to direct or control the manufacturing process and/or importation by Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and/or other parties for the Accused HB Products.  AMD is therefore vicariously liable for these actions.

154.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '010 patent under 35 U.S.C. §§ 271(a).

155.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '010 patent under 35 U.S.C. § 271(b).

156.    AMD had knowledge of the '010 patent since at least the filing of this Complaint.

157.    Alternatively, AMD took and continues to take the above actions intending to cause infringing acts by others, and/or willfully blinded itself as to the existence of the Asserted Patent and the Accused HB Products' infringement thereof.

158.    AMD has induced third parties and continues to induce third parties, such as the Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and AMD customers, to make, use, sell, offer for sale, or import into the United States the Accused HB Products.

159.    AMD's agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused HB Products contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused HB Products.

160.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '010 patent under 35 U.S.C. § 271(b).

161.    AMD's infringement of the '010 patent has been willful and egregious and continues to be willful and egregious.

162.    AMD's acts of infringement have caused and continue to cause damage to Plaintiffs.  Plaintiffs are entitled to recover from AMD the damages sustained by Plaintiffs as a result of these wrongful acts in an amount subject to proof at trial.

## COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 9,564,446

163.    Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

164.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Plaintiffs reserve the right to modify this description, including, for example, on the basis of information about the Accused Products that they obtain during discovery.

165.    The '446 patent, entitled "SRAM Design to Facilitate Single Fin Cut in Double Sidewall Image Transfer Process," issued on February 7, 2017, and names Mary E. Weybright and Robert C. Wong as inventors.  The '446 patent is attached as Exhibit D.

166.    Adeia Semiconductor Solutions LLC owns all rights, title, and interest in the '446 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

167.    The '446 patent is valid, enforceable, and directed to patentable subject matter.

168.    The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '446 patent, and therefore Plaintiffs have satisfied its obligations under 35 U.S.C. § 287 with respect to the '446 patent.

169.    AMD has infringed and continues to infringe one or more claims of the '446 patent by making, using, selling and/or offering to sell Accused APN Products made with 7nm and/or 6nm node processes in this District and elsewhere in the United States, and/or importing Accused APN Products made with 7nm and/or 6nm node processes into this District and elsewhere in the United States.

170.    The Accused APN Products made with 7nm and/or 6nm node processes are made and continue to be made by a process patented in one or more claims of the '446 patent during the term of the patent.  The Accused APN Products made with 7nm and/or 6nm node processes are not materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

171.    Plaintiffs provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and

functionalities identified below and for other claims and functionalities of the Accused APN Products made with 7nm and/or 6nm node processes.

172.    Claim 1 of the '446 patent recites: "A process for forming a fin structure having a fin pitch of less than 40 nanometers."  To the extent that this preamble is limiting, the Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

173.    The AMD Ryzen™ 5 3600X Zen 2 Processor is an Accused APN Product made with at least a 7nm node process.  It is constructed by forming a fin structure having a fin pitch of less than 40 nanometers.



174.    Claim 1 of the '446 patent recites: "providing a multilayer structure overlaying a semiconductor substrate, wherein the multilayer structure comprises a planar cap layer, and alternating dielectric and hard mask layers stackedly arranged on the semiconductor substrate." The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

175.    Analysis of the Ryzen™ 5 3600X Zen 2 Processor shows it is made using a process that provides a multilayer structure overlaying a semiconductor substrate, wherein the multilayer structure comprises a planar cap layer, and alternating dielectric and hard mask layers stackedly arranged on the semiconductor substrate.





176.    The above images are indicative of a self-aligned quadruple patterning (SAQP) process.  On information and belief, the Ryzen™ 5 3600X Zen 2 Processor is made with a self-aligned quadruple patterning (SAQP) process.

177.    Below is an exemplary self-aligned quadruple patterning process flow showing a multilayer structure overlaying a semiconductor substrate, wherein the multilayer structure comprises a planar cap layer, and alternating dielectric and hard mask layers stackedly arranged on the semiconductor substrate.



Source: Angélique Ray, et al., *A Spacer-On-Spacer Scheme for Self-Aligned Multiple Patterning and Integration*, SOC'Y PHOTO-OPTICAL INSTRUMENTATION ENG'RS (Aug. 11, 2016), https://spie.org/news/6583-a-spacer-on-spacer-scheme-for-self-aligned-multiple-patterning-and-integration.

178.    Claim 1 of the '446 patent recites: "lithographically patterning a photoresist disposed on the cap layer to form a first mandrel pattern consisting of first and second mandrel shapes."  The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

179.    The Ryzen™ 5 3600X Zen 2 Processor is made using a process that lithographically patterns a photoresist disposed on the cap layer to form a first mandrel pattern consisting of first and second mandrel shapes.

180.    Below is an exemplary SAQP process flow showing lithographically patterning a photoresist (PR) disposed on the cap layer to form a first mandrel pattern consisting of first and second mandrel shapes.



Source: Angélique Ray, et al., *A Spacer-On-Spacer Scheme for Self-Aligned Multiple Patterning and Integration*, SOC'Y PHOTO-OPTICAL INSTRUMENTATION ENG'RS (Aug. 11, 2016), https://spie.org/news/6583-a-spacer-on-spacer-scheme-for-self-aligned-multiple-patterning-and-integration.

181.    Claim 1 of the '446 patent recites: "forming first sidewall spacers on the first mandrel pattern, wherein sidewall spacers between adjacent first and second mandrel shapes overlap or merge."  The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

182.    The Ryzen™ 5 3600X Zen 2 Processor is made using a process that forms first sidewall spacers on the first mandrel pattern.  The sidewall spacers between adjacent first and second mandrel shapes overlap or merge.

183.    Claim 1 of the '446 patent recites: "removing the first mandrel pattern and etching the structure to form a second mandrel pattern consisting of a first mandrel shape and a second mandrel shape, wherein the second mandrel shape is at about two times a width of the first mandrel shape."  The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

184.    Analysis of the Ryzen™ 5 3600X Zen 2 Processor show it is made using a process that removes the first mandrel pattern and etches the structure to form a second mandrel pattern consisting of a first mandrel shape and a second mandrel shape.  The second mandrel shape is at about two times a width of the first mandrel shape.

185.    The below images are indicative of a SAQP process where a second mandrel shape is about two times a width of a first mandrel shape, as indicated by the double spacing between certain fin pairs.





186.    Claim 1 of the '446 patent recites: "forming second sidewall spacers on the second mandrel pattern."  The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

187.    The Ryzen™ 5 3600X Zen 2 Processor is made using a process that forms second sidewall spacers on the second mandrel pattern.

188.    Below is an exemplary SAQP process flow showing forming second sidewall spacers on the second mandrel pattern.



Source: Angélique Ray, et al., *A Spacer-On-Spacer Scheme for Self-Aligned Multiple Patterning and Integration*, Soc'y Photo-Optical Instrumentation Eng'rs (Aug. 11, 2016), https://spie.org/news/6583-a-spacer-on-spacer-scheme-for-self-aligned-multiple-patterning-and-integration.

189.    Claim 1 of the '446 patent recites: "etching the structure to form multiple fin pairs in the semiconductor substrate comprising fin pairs having a minimal spacing and fin pairs that are about two times the minimal spacing."  The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.

190.    Analysis of the Ryzen™ 5 3600X Zen 2 Processor show it is made using a process that etches the structure to form multiple fin pairs in the semiconductor substrate comprising fin pairs having a minimal spacing and fin pairs that are about two times the minimal spacing.



191.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '446 patent, which is a process patent, based on the importation, sale, offer for sale, or use of the Accused APN Products which are made and continue to be made from the '446

58

patent's processes patented in the United States and a substantial likelihood exists that the Accused APN Products were made and continue to be made by the '446 patent's patented processes.

192.    In addition or in the alternative, AMD has directed or controlled and continues to direct or control the manufacturing process and/or importation by Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and/or other parties for the Accused APN Products made with 7nm and/or 6nm node processes.  AMD is therefore vicariously liable for these actions. Moreover, based on this direction and control, AMD is also not entitled to the modifications of remedies provided in 35 U.S.C. § 287 based on its (or entities it directs or controls) infringement under 35 U.S.C. § 271(g).

193.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '446 patent under 35 U.S.C. §§ 271(a) and/or (g).

194.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '446 patent under 35 U.S.C. § 271(b).

195.    AMD had knowledge of the '446 patent since at least the filing of this Complaint.

196.    Alternatively, AMD took the above actions intending to cause infringing acts by others, and/or willfully blinded itself as to the existence of the Asserted Patent and the infringement of the Accused APN Products made with 7nm and/or 6nm node processes.

197.    AMD has induced third parties and continues to induce third parties, such as the Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and AMD customers, to make, use, sell, offer for sale, or import into the United States the Accused APN Products made with 7nm and/or 6nm node processes.

198.    AMD's agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused APN Products made with 7nm and/or 6nm node processes contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused APN Products made with 7nm and/or 6nm node processes.

199.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '446 patent under 35 U.S.C. § 271(b).

200.    AMD's infringement of the '446 patent has been willful and egregious and continues to be willful and egregious.

201.    AMD's acts of infringement have caused and continue to cause damage to Plaintiffs.  Plaintiffs are entitled to recover from AMD the damages sustained by Plaintiffs as a result of these wrongful acts in an amount subject to proof at trial.

## COUNT 5: INFRINGEMENT OF U.S. PATENT NO. 11,978,639

202.    Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

203.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Plaintiffs reserve the right to modify this description, including, for example, on the basis of information about the Accused Products that they obtain during discovery.

204.    The '639 patent, entitled "Two-Color Self-Aligned Double Patterning (SADP) To Yield Static Random Access Memory (SRAM) and Dense Logic," issued on May 7, 2024, and names Fee Li Lie, Dongbing Shao, Robert C. Wong, and Yongan Xu as inventors.  The '639 patent is attached as Exhibit E.

205.    Adeia Semiconductor Solutions LLC owns all rights, title, and interest in the '639 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

206.    The '639 patent is valid, enforceable, and directed to patentable subject matter.

207.    The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '639 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '639 patent.

208.    AMD has infringed and continues to infringe one or more claims of the '639 patent by making, using, selling and/or offering to sell Accused APN Products made with 5nm and/or 4nm node processes in this District and elsewhere in the United States, and/or importing Accused APN Products made with 5nm and/or 4nm node processes into this District and elsewhere in the United States.

209.    The Accused APN Products made with 5nm and/or 4nm node processes are made and continue to be made by a process patented in one or more claims of the '639 patent during the term of the patent.  The Accused APN Products made with 5nm and/or 4nm node processes are not materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

210.    Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused APN Products made with 5nm and/or 4nm node processes.

211. Claim 9 of the '639 patent recites: "A method of forming a semiconductor region, the method comprising." To the extent that this preamble is limiting, the Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

212. The AMD Ryzen™ 7600X is an Accused APN Product made with 5nm and/or 4nm node processes. It is constructed by forming a semiconductor region. For example, it includes a SRAM memory cell array with a 2-2-1 SRAM fin patterning that is a semiconductor region.



213. Claim 9 of the '639 patent recites: "performing a first lithography process using a first mask" and "forming first features comprising a first mandrel pattern based on the first lithography process." The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

214. Analysis of the AMD Ryzen™ 7600X shows that it is constructed by a first lithography process that forms first features comprising a first mandrel pattern which is subsequently evident between the fin pattern in the final product.





215.    Claim 9 of the '639 patent recites: "performing a second lithography process using a second mask" and "forming second features comprising a second mandrel pattern based on the second lithography process."   The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

216.    Analysis of the AMD Ryzen™ 7600X shows that it is constructed by a second lithography process that forms second features comprising a second mandrel pattern which is subsequently evident between the fin pattern in the final product.





217.    Claim 9 of the '639 patent recites: "concurrently forming spacers on first mandrels corresponding to the first mandrel pattern and second mandrels corresponding to the second mandrel pattern, wherein the first and second mandrels are disposed in the semiconductor region in a same layer above a substrate; and."  The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

218.    Analysis of the AMD Ryzen™ 7600X shows that it is constructed by concurrently forming spacers on first mandrels and second mandrels that is subsequently transferred to a fin pattern in the final product.





219.    Claim 9 of the '639 patent recites: "subsequent to forming the spacers, removing the first and second mandrels to form an intermediate fin pattern in the semiconductor region, wherein."  The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

220.    Analysis of the AMD Ryzen™ 7600X shows that it is constructed by, subsequent to forming the spacers, removing the first and second mandrels to form an intermediate fin pattern that is subsequently transferred to a fin pattern in the final product.





221.    Claim 9 of the '639 patent recites: "the intermediate fin pattern comprises: first and second intermediate fins corresponding to spacers on opposite sides of one of the first mandrels; and third and fourth intermediate fins corresponding to spacers on opposite sides of a first one of the second mandrels; the second intermediate fin is adjacent to the third intermediate fin; and." The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

222.    Analysis of the AMD Ryzen™ 7600X shows that it is constructed by using such an intermediate fin pattern that is subsequently transferred to a fin pattern in the final product.





223.    Claim 9 of the '639 patent recites: "a pitch between the first and second intermediate fins is different than a pitch between the second and third intermediate fins." The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element.

224.    Analysis of the AMD Ryzen™ 7600X shows that it is constructed by with a pitch between the first and second intermediate fins that is different than a pitch between the second and third intermediate fins, which is subsequently transferred to different pitches in the fin pattern in the final product.





225.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '639 patent, which is a process patent, based on the importation, sale, offer for sale, or use of the Accused APN Products which are made and continue to be made from the '639 patent's processes patented in the United States and a substantial likelihood exists that the Accused APN Products were made and continue to be made by the '639 patent's patented processes.

226.    In addition or in the alternative, AMD has directed or controlled and continues to direct or control the manufacturing process and/or importation by Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and/or other parties for the Accused APN Products made with 5nm and/or 4nm node processes. AMD is therefore vicariously liable for these actions. Moreover, based on this direction and control, AMD is also not entitled to the modifications of remedies provided in 35 U.S.C. § 287 based on its (or entities it directs or controls) infringement under 35 U.S.C. § 271(g).

227.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '639 patent under 35 U.S.C. §§ 271(a) and/or (g).

228.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '639 patent under 35 U.S.C. § 271(b).

229.    AMD had knowledge of the '639 patent since at least the filing of this Complaint.

68

230.    Alternatively, AMD took and continues to take the above actions intending to cause infringing acts by others, and/or willfully blinded itself as to the existence of the Asserted Patent and the infringement of the Accused APN Products made with 5nm and/or 4nm node processes.

231.    AMD has induced third parties and continues to induce third parties, such as the Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and AMD customers, to make, use, sell, offer for sale, or import into the United States the Accused APN Products made with 5nm and/or 4nm node processes.

232.    AMD's agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused APN Products made with 5nm and/or 4nm node processes contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused APN Products made with 5nm and/or 4nm node processes.

233.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '639 patent under 35 U.S.C. § 271(b).

234.    AMD's infringement of the '639 patent has been willful and egregious and continues to be willful and egregious.

235.    AMD's acts of infringement have caused and continue to cause damage to Plaintiffs.  Plaintiffs are entitled to recover from AMD the damages sustained by Plaintiffs as a result of these wrongful acts in an amount subject to proof at trial.

## COUNT 6: INFRINGEMENT OF U.S. PATENT NO. 10,283,592

236.    Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

237.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Plaintiffs reserve the right to modify this description, including, for example, on the basis of information about the Accused Products that they obtain during discovery.

238.    The '592 patent, entitled "Approach to Minimization of Strain Loss in Strained Fin Field Effect Transistors," issued on May 7, 2019, and names Zhenxing Bi, Kangguo Cheng, Juntao Li, and Peng Xu as inventors.  The '592 patent is attached as Exhibit F.

239.    Adeia Semiconductor Solutions LLC owns all rights, title, and interest in the '592 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

240.    The '592 patent is valid, enforceable, and directed to patentable subject matter.

241.    AMD has infringed and continues to infringe one or more claims of the '592 patent by making, using, selling and/or offering to sell Accused APN Products made with a 3nm node process in this District and elsewhere in the United States, and/or importing Accused APN Products made with a 3nm node process into this District and elsewhere in the United States.

242.    Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused APN Products made with a 3nm node process.

243.    Claim 1 of the '592 patent recites: "a vertical fin device, comprising."  To the extent the preamble is limiting, the Accused APN Products made with a 3nm node process comprise this element.

244.    The AMD EPYC™ 9645 product is an Accused APN Product made with a 3nm node process.  The AMD EPYC™ 9645 product comprises a vertical fin device.

**DECOUPLED INNOVATION PATHS**

AMD EPYC processors have decoupled the innovation paths for CPU cores and I/O functions into different dies that can be developed on their own timelines and produced with process technologies appropriate for the tasks they need to accomplish. Generation over generation, we have pushed the size of CPU dies smaller as process technology allows (Figure 1). Today's 'Zen 5' cores are produced using 4nm process technology, the 'Zen 5c' core is produced at 3nm, and the I/O die remains at 6nm from the prior generation.

**'ZEN 5C' CCD**

The 'Zen 5c' CPU core is designed for high density and energy efficiency. The same logic as the 'Zen 5' core is more closely packed in its core complex to build processors with up to 192 cores. The 'Zen 5c' CPU die holds 16 cores each having 1 MB L2 cache and a shared 32 MB L3 cache (Figure 3). To create processors with more than 128 cores, up to 12 of these dies can be attached to the I/O die for a total of up to 192 cores per processor for ultra-dense, high-performance systems. The 'Zen 5c' die is also used in the 128-core EPYC 9745 and the 96-core EPYC 9645 processors to provide an alternate, lower-power option compared to CPUs with the same core count built with the 'Zen 5' core die.

Source: *5th Gen AMD EPYC™ Processor Architecture*, AMD (Mar. 2025), https://docs.amd.com/v/u/en-US/5th-gen-amd-epyc-processor-architecture-white-paper.



245.    Claim 1 of the '592 patent recites: "a plurality of strained, straight, vertical fin segments on a substrate, wherein each of the plurality of strained, straight, vertical fin segments has a tensile or compressive strain."  The Accused APN Products made with a 3nm node process comprise this element.

246.    Analysis of the AMD EPYC™ 9645 product show it comprises a plurality of strained, straight, vertical fin segments on a substrate that have tensile or compressive strain.



247.    Claim 1 of the '592 patent recites: "a plurality of gate spacers on each of the plurality of strained, straight, vertical fin segments."  The Accused APN Products made with a 3nm node process comprise this element.

248.    Analysis of the AMD EPYC™ 9645 product show it comprises a plurality of gate spaces on each of the vertical fin segments.



249.    Claim 1 of the '592 patent recites: "a gate structure within each of the gate spacers." The Accused APN Products made with a 3nm node process comprise this element.

250.    Analysis of the AMD EPYC™ 9645 product show it comprises a gate structure within each of the gate spacers.



251.    Claim 1 of the '592 patent recites: "a plurality of source/drain contacts on one or more of the plurality of strained, straight, vertical fin segments, wherein each of the plurality of source/drain contacts is adjacent to at least one of the plurality of gate spacers." The Accused APN Products made with a 3nm node process comprise this element.

252.    Analysis of the AMD EPYC™ 9645 product show it comprises a plurality of source/drain contacts on one or more of the vertical fin segments, wherein each of the source/drain contacts is adjacent to at least one of the plurality of gate spacers.



253.    Claim 1 of the '592 patent recites: "an insulating liner in contact with an endwall of two or more of the plurality of strained, straight, vertical fin segments, wherein the insulating liner extends from within the substrate to the top of the adjacent gate spacer."  The Accused APN Products made with a 3nm node process comprise this element.

254.    Analysis of the AMD EPYC™ 9645 product show it comprises an insulating liner in contact with an endwall of two or more of the plurality of vertical fin segments, wherein the insulating liner extends from within the substrate to the top of the adjacent gate spacer.



255.    Claim 1 of the '592 patent recites: "and an interlevel dielectric on each of the plurality of gate spacers, the two insulating liners, and the source/drain contacts."  The Accused APN Products made with a 3nm node process comprise this element.

256.    Analysis of the AMD EPYC™ 9645 product show it comprises an interlevel dielectric on each of the plurality of gate spacers, the two insulating liners, and the source/drain contacts.



257.     In addition or in the alternative, AMD has directed or controlled and continues to direct or control the manufacturing process and/or importation by Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and/or other parties for the Accused APN Products made with a 3nm node process.  AMD is therefore vicariously liable for these actions.

258.     Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '592 patent under 35 U.S.C. §§ 271(a).

259.     In addition, AMD has indirectly infringed and continues to indirectly infringe the '592 patent under 35 U.S.C. § 271(b).

260.     AMD had knowledge of the '592 patent since at least the filing of this Complaint.

261.    Alternatively, AMD took and continues to take the above actions intending to cause infringing acts by others, and/or willfully blinded itself as to the existence of the Asserted Patent and the infringement of the Accused APN Products made with a 3nm node process.

262.    AMD has induced third parties and continues to induce third parties, such as the Wafer Foundry Facilities, ATMP Facilities, Shipping Facilities, and AMD customers, to make, use, sell, offer for sale, or import into the United States the Accused APN Products made with a 3nm node process.

263.    AMD's advertising, sales, design, development, and/or technical materials related to operation of the Accused APN Products made with a 3nm node process contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused APN Products made with a 3nm node process.

264.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '592 patent under 35 U.S.C. § 271(b).

265.    AMD's infringement of the '592 patent has been willful and egregious and continues to be willful and egregious.

266.    AMD's acts of infringement have caused and continue to cause damage to Plaintiffs.  Plaintiffs are entitled to recover from AMD the damages sustained by Plaintiffs as a result of these wrongful acts in an amount subject to proof at trial.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE Plaintiffs Adeia Semiconductor Bonding Technologies Inc., Adeia Semiconductor Inc., and Adeia Semiconductor Solutions LLC ask this Court for an order granting the following relief:

A.    A judgment in favor of Plaintiffs that AMD has infringed, either literally and/or under the doctrine of equivalents, the '378, '226, '010, '446, '639, and '592 patents;

B.    A judgment and order finding that AMD's infringement has been willful;

C.    Preliminary and/or permanent injunctions prohibiting AMD from further acts of infringement;

D.    A judgment and order requiring AMD to pay Plaintiffs their damages, costs, expenses, and any enhanced damages to which Plaintiffs are entitled for AMD's infringement;

E.    A judgment and order requiring AMD to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

F.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiffs their reasonable attorneys' fees against AMD; and

G.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

DATED: November 3, 2025

Respectfully submitted,

*/s/Bradley W. Caldwell*
Jennifer D. Cieluch
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9400

Adam D. Swain
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
(202) 239-3300

John D. Haynes
Nicholas T. Tsui
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000

Stephen R. Lareau
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28203-6818
(704) 444-1000

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Robert Seth Reich, Jr.
Texas Bar No. 24088283
Email: rreich@caldwellcc.com
Brian D. Johnston (*pro hac vice* pending)
Texas Bar No. 24080965
Email: bjohnston@caldwellcc.com
Andrew T. Langford
Texas Bar No. 24087886
Email: alangford@caldwellcc.com
Eric M. Horsley (*pro hac vice* pending)
Texas Bar No. 24131396
Email: ehorsley@caldwellcc.com

Bjorn A. Blomquist
Texas Bar No. 24125125
Email: bblomquist@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl Street
Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Mark D. Siegmund
Texas Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas
76710
Phone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

*Counsel for Plaintiffs Adeia Semiconductor*
*Bonding Technologies Inc., Adeia*
*Semiconductor Inc., and Adeia*
*Semiconductor Solutions LLC*