**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| ADEIA SEMICONDUCTOR BONDING TECHNOLOGIES INC., ADEIA SEMICONDUCTOR INC. & ADEIA SEMICONDUCTOR SOLUTIONS LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> ADVANCED MICRO DEVICES, INC., <br><br> *Defendant*. | Civil Action No. 7:25-CV-00510-DC-DTG |

## ADVANCED MICRO DEVICES INC.'S MOTION TO DISMISS UNDER FEDERAL RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF

# TABLE OF CONTENTS

**Page**

I.    Introduction ..................................................................................................... 1

II.   Factual Background ......................................................................................... 2

III.  Legal Standard ................................................................................................ 5

    A.    Pre-Suit Willful and Induced Infringement ........................................... 5

    B.    Direct Infringement ............................................................................... 5

IV.   Argument ......................................................................................................... 7

    A.    The Court Should Dismiss Adeia's Pre-Suit Willfulness Claims For
        Failure to Allege Pre-Suit Knowledge ................................................... 7

    B.    The Court Should Also Dismiss Adeia's Pre-Suit Inducement Claims For
        Failure to Allege Pre-Suit Knowledge, Failure to Allege Intent, and
        Failure to Allege Underlying Infringement ............................................ 8

    C.    The Court Should Dismiss Adeia's Direct Infringement Claims ........................... 9

    1. Adeia Fails to Map Structural Elements of the System Patents to Any Accused
       Product ............................................................................................................ 9

    2. Adeia Fails to Plausibly Allege That the Steps of the Method Claims Are
       Performed by or Attributable to AMD ...................................................... 13

    3. Adeia Fails to Plead Factual Support for Process-Specific Limitations of
       Method Claims .............................................................................................. 15

V.    Conclusion ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
  2014 WL 2892285 (W.D. Tex. May 12, 2014) ........................................................ 9

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) ................................................................ 6, 13

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ..................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 5, 14

*Atlas Glob. Techs., LLC v. Sercomm. Corp.*,
  638 F. Supp. 3d 721 (W.D. Tex. 2022) .............................................................. 1, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 5, 6

*Celanese Int'l Corp. v. Anhui Jinhe Indus. Co., Ltd.*,
  2021 WL 7209494 (D.Del. Dec. 10, 2021) .......................................................... 6, 20

*Chapterhouse, LLC v. Shopify, Inc.*,
  2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ........................................................... 10

*De La Vega v. Microsoft Corp.*,
  2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ............................................................. 6

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) .......................................................................... 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754, 766 (2011) ................................................................................ 5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) ..................................................................................... 5

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
  2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ............................................................. 9

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016) ..................................................................... 6, 14

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) ......................................................................... 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ................................................................................... 9

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
  2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ............................................................. 8

*Palisade Techs., LLP v. Micron Tech., Inc.*,
    No. 7-24-cv-00262 (W.D. Tex. Jul. 24, 2025)..................................................... passim

*Sanofi, LLC v. Watson Labs. Inc.*,
    875 F.3d 636 (Fed. Cir. 2017) ...................................................................... 8

*SitePro, Inc. v. TankLogix, LLC*,
    No. 6-24-cv-00642 (W.D. Tex. Aug. 15, 2025) ............................................... 1, 5, 7

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    WL 3030066 (N.D. Tex. July 2, 2021)........................................................... 6

*Vervain, LLC v. Micron Tech., Inc.*,
    2022 WL 23469 (W.D. Tex. Jan. 3, 2022) .................................................. 6, 10, 13

**Statutes**

35 U.S.C. § 271(g) ........................................................................................... 20

## I.    __INTRODUCTION__

Plaintiffs Adeia Semiconductor Bonding Technologies Inc., Adeia Semiconductor Inc., and Adeia Semiconductor Solutions LLC (collectively, "Adeia") fail to plead pre-suit knowledge of the asserted patents, a prerequisite for any pre-suit willful and induced infringement claims. *See, e.g., Palisade Techs., LLP v. Micron Tech., Inc.*, No. 7-24-cv-00262, Dkt. 55 at 5 (W.D. Tex. Jul. 24, 2025); *SitePro, Inc. v. TankLogix, LLC*, No. 6-24-cv-00642, Dkt. 36 at 5 (W.D. Tex. Aug. 15, 2025); *Atlas Glob. Techs., LLC v. Sercomm. Corp.*, 638 F. Supp. 3d 721, 728 (W.D. Tex. 2022).  Notwithstanding this Court's clear precedent, Adeia asserts these claims against defendant Advanced Micro Devices, Inc. ("AMD") without alleging facts showing pre-suit knowledge of the asserted patents.  *See* Dkt. 1 ("Complaint") at 81 (Prayer for Relief), ¶¶ 96, 101, 126, 131, 156, 161, 195, 200, 229, 234, 260, 265.  Adeia's pre-suit[1] willful and induced infringement allegations do not meet the pleading standard and should be dismissed.

Adeia's direct infringement allegations are also deficient.  The Complaint relies on generic assertions, parrots claim language, and recites boilerplate legal standards, falling far short of the plausibility requirements set forth in *Iqbal* and *Twombly*.  For the asserted system claims, Adeia "does not map the claim elements to any specific feature of the accused products" and "merely parrots the language of the [asserted] patent without identifying what components of the accused products are alleged to meet each claim element."  *Palisade*, No. 7-24-cv-00262, Dkt. 55 at 3-4. Adeia alleges that AMD's products meet each limitation by repetitively pasting the same handful of images for nearly every limitation across multiple patents without tying any claim element to those images.  Such conclusory, copy-and-paste pleading does not provide AMD fair notice of Adeia's infringement theories and thus fails to state a plausible claim under Rule 12(b)(6).

---

[1]Although Adeia's post-suit willful and induced infringement claims are also inadequate, this motion is limited to pre-suit claims.

Adeia's allegations are even more deficient for the asserted method claims. First, Adeia fails to plausibly allege that each step of the asserted method claims is performed by or attributable to AMD. The asserted method claims are directed to semiconductor manufacturing and packaging processes. Adeia expressly acknowledges that AMD does not perform these activities, which are carried out by third parties. *See, e.g.*, Dkt. 1 at ¶¶ 50-51 ("Wafers for AMD's products are either sorted by the foundry or delivered by the foundry to AMD's assembly, test, mark, and packaging (ATMP) partners or subcontractors" "who package and test AMD's final semiconductor products"). Despite this admission, Adeia does not allege facts sufficient to establish that these third-party manufacturing and packaging actions are attributable to AMD.

Second, Adeia fails to plead facts that plausibly suggest that all asserted method steps were practiced in making AMD's products—whether by AMD or a third party. The asserted method claims recite sequential manufacturing and packaging steps that cannot be shown through Adeia's cited illustrations of AMD's ***finished products***. Adeia either: (a) ignores these limitations altogether, (b) cites documentation that contradicts Adeia's allegations, or (c) cites irrelevant, third-party materials about how unrelated entities produce semiconductor products. Because Adeia has not plausibly alleged that any accused product was made using the claimed methods, its infringement allegations for the asserted method claims should be dismissed.

## II.    **FACTUAL BACKGROUND**

Adeia filed the Complaint on November 3, 2025, asserting six patents against AMD: U.S. Patent Nos. 8,389,378 ("the '378 Patent"); 10,879,226 ("the '226 Patent"); 12,401,010 ("the '010 Patent"); 9,564,446 ("the '446 Patent"); 11,978,639 ("the '639 Patent"); and 10,283,592 ("the '592 Patent") (collectively, the "Asserted Patents"). Two Asserted Patents—the '592 and '010 Patents—include only system claims (the "System Patents"). The remaining four—the '378, '226,

'446, and '639 Patents—include asserted method claims (the "Method Patents").[2]  Adeia asserts

direct, willful, and induced infringement claims for each patent.  *See* Dkt. 1 at ¶¶ 94, 98, 101, 124,

128, 131, 154, 158, 161, 193, 197, 200, 228, 231, 234, 258, 262, 265.

Adeia alleges that AMD has "had knowledge of the [Asserted Patents] since at least the

filing of this Complaint."  *Id.* at ¶¶ 96, 126, 156, 195, 229, 260.  The Complaint does not allege

that AMD had pre-suit knowledge of the Asserted Patents.  *Id*.  Nonetheless, the Complaint

asserts—and seeks relief for—willful and induced infringement claims that are not limited to the

post-suit period.  *See, e.g., id*. at ¶ 101 (alleging that "AMD's infringement of the '378 patent **has**

**been** willful and egregious and continues to be willful and egregious").[3]

The Complaint provides only formulaic, conclusory allegations to support its induced

infringement claims.  *See, e.g., id*. at ¶ 99 ("AMD's agreements, directives, advertising, sales,

design, development, and/or technical materials" "contain instructions, directions, suggestions,

and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion,

and/or cause customers and distributors to import into the United States or to offer to sell, sell, or

use" the accused products).  Adeia does not allege any facts showing AMD's supposed instruction

or encouragement, to whom it was directed, or how it resulted in the infringement of any claim.

For its direct infringement allegations, the Complaint repeats or rephrases the claim

language without alleging facts about how the accused products meet each limitation.  Instead of

pleading supporting facts, Adeia copies and pastes a handful of images throughout the Complaint

and conclusively asserts that the accused products infringe.  For example, the Complaint cites the

same image from an IEEE article across ten claim limitations of three Asserted Patents ('378, '226,

---

[2] While Claims 17-22 of the '226 Patent are system claims, the Complaint includes allegations
only for method claim 1.  *See* Dkt. 1 at ¶¶ 103-132.
[3] All emphasis added unless otherwise noted.

and '010 Patent)—all without any annotation or explanation. *See id.* at ¶¶ 113, 115, 117, 119, 121, 144, 146, 148, 150, 152. Likewise, the Complaint includes six grainy, unlabeled electron microscope images for 17 claim limitations of the three remaining Asserted Patents ('446, '639 and '592 Patents)—again without any annotation or explanation. *See id.* at ¶¶ 173, 175, 185, 190 (citing two unlabeled images); ¶¶ 212 (citing an unlabeled image); ¶¶ 214, 216, 218, 220, 222, 224 (all citing the same two unlabeled images); ¶¶ 246, 248, 250, 252, 254, 256 (all citing the same unlabeled image). The Complaint does not identify any specific component, structure, or functionality of the accused products allegedly corresponding to the Asserted Patents' limitations.

Adeia relies on third parties' activities to allege direct infringement of the Method Patents. Adeia admits that AMD does not package or manufacture the accused products. *See* Dkt. 1 at ¶¶ 50-51 ("AMD has foundry arrangements with TSMC for the production of wafers …. AMD utilizes TSMC, United Microelectronics Corporation (UMC), and Samsung Electronics Co., Ltd. for the production of its integrated circuits (IC) in the form of programmable logic devices…. Wafers for AMD's products are either sorted by the foundry or delivered by the foundry to AMD's assembly, test, mark, and packaging (ATMP) partners or subcontractors located in the Asia-Pacific region who package and test AMD's final semiconductor products."). Adeia does not allege that these third parties infringe any Asserted Patent.[4] Adeia also does not plead that AMD is in a joint enterprise with the aforementioned third parties. While Adeia provides boilerplate allegations that AMD "directs and controls" their actions, the Complaint does not allege any facts substantiating that legal conclusion. *Id.* at ¶¶ 50-60. And the Complaint alleges §271(g) as an alternative theory for the Method Patents without pleading any supporting facts. *Id.* at ¶¶ 93, 123, 192, 226.

---

[4] Adeia's own website lists Samsung and UMC as companies licensed to practice its semiconductor patents. *See, e.g.*, https://adeia.com/licensing.

### III.    LEGAL STANDARD

#### A.    Pre-Suit Willful and Induced Infringement

To state a claim for pre-suit willful or induced infringement, the plaintiff must, at a minimum, plead facts plausibly showing that the defendant had pre-suit knowledge of the asserted patents.  *See SitePro*, No. 6-24-cv-00642, Dkt. 36 at 5 (holding that "plaintiff's willful infringement, inducement, and contributory infringement claims require the plaintiff to plead that the defendant has knowledge of the asserted patents"); *Palisade*, No. 7-24-cv-00262, Dkt. 55 at 5 (dismissing pre-suit willful and induced infringement where plaintiff "fail[ed] to plead sufficient facts that would support an allegation of pre-suit knowledge of the patents").  Beyond knowledge of the asserted patents, a claim for willful patent infringement must allege that infringement was "intentional or knowing."  *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 579 U.S. 93, 94 (2016).

A claim for induced infringement under 35 U.S.C. § 271(b) further requires: (1) an act of direct infringement by another; and (2) facts plausibly showing that the defendant knowingly induced the infringement with the specific intent to encourage another's infringement.  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).  The intent element requires that the defendant "[know] that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

#### B.    Direct Infringement

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555, 570 (2007)).  Therefore, plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The *Iqbal/Twombly* pleading standard applies to patent infringement claims. *See Artrip v. Ball Corp.*, 735 F. App'x 708, 714 n.4 (Fed. Cir. 2018).  To allege infringement, "the complaint must support . . . entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation."  *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022).  "[A] court should dismiss a patent-infringement claim where the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation."  *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *4 (N.D. Tex. July 2, 2021); *see also De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6-7 (W.D. Tex. Feb. 11, 2020).  Liability "under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a). . . ."  *Celanese Int'l Corp. v. Anhui Jinhe Indus. Co., Ltd.*, 2021 WL 7209494, at *3 (D. Del. Dec. 10, 2021) (internal citation omitted).

To state a case for infringement of a method claim under 35 U.S.C. §271(a), the plaintiff must plausibly allege that "all steps of a claimed method are performed by or attributable to a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  If plaintiffs rely on a direction and control theory of joint infringement, they must plausibly allege a relationship between defendants and the each of the allegedly directed and controlled third parties to show that "the actions of these []third parties should be attributed to Defendants."  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016).

IV.    **ARGUMENT**

A.    **The Court Should Dismiss Adeia's Pre-Suit Willfulness Claims For Failure to Allege Pre-Suit Knowledge**

Adeia's claims for pre-suit willful infringement are legally insufficient because the Complaint fails to allege: (1) that AMD had pre-suit knowledge of the Asserted Patents, or (2) facts plausibly demonstrating that AMD knew of any alleged infringement of those patents. Either deficiency independently warrants dismissal of Adeia's pre-suit willful infringement claims.

First, Adeia fails to plead facts sufficient to support a plausible inference of pre-suit knowledge. Adeia's willful infringement allegations are not limited to the post-suit period. *See, e.g.*, Dkt. 1 at ¶ 101 (alleging that "AMD's infringement of the '378 patent **has been** willful and egregious and continues to be willful and egregious"); p. 81 ("Prayer for Relief" requesting a "judgment and order finding that AMD's infringement **has been** willful"). Yet Adeia relies solely on the filing of the Complaint to allege knowledge, asserting that "AMD had knowledge of [each Asserted Patent] since at least the filing of this Complaint." *Id*. at ¶¶ 96, 126, 156, 195, 229, 260. Adeia alleges no facts suggesting that AMD had knowledge of any Asserted Patent before suit. This Court has repeatedly held that "knowledge of the asserted patents 'since at least the filing and service of the Complaint'" is insufficient to "conclude that the defendant had pre-suit knowledge of the asserted patents." *SitePro*, No. 6-24-cv-00642, Dkt. 36 at 5; *see also Palisade*, No. 7-24-cv-00262, Dkt. 55 at 5; *Atlas*, 638 F. Supp. 3d at 728.

Second, the Complaint does not allege facts plausibly showing that AMD had any knowledge of the alleged infringement. Knowledge of a patent and knowledge of infringement are "distinct elements, and without more factual allegations supporting knowledge of infringement, the pleading standard is not met." *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1,

2021).  Accordingly, the Court should dismiss Adeia's claims of pre-suit willful infringement.

**B.**   **The Court Should Also Dismiss Adeia's Pre-Suit Inducement Claims For Failure to Allege Pre-Suit Knowledge, Failure to Allege Intent, and Failure to Allege Underlying Infringement**

Similarly, Adeia's pre-suit inducement claims fail because the Complaint does not plead pre-suit knowledge of the Asserted Patents or any alleged infringement.  Like its willful infringement claims, Adeia's inducement allegations are not limited to the post-suit period.  *See, e.g.*, Dkt. 1 at ¶ 98 (claiming that "AMD ***has induced*** third parties and continues to induce third parties . . . to make, use, sell, offer for sale, or import into the United States the Accused HB Products.").  Under 35 U.S.C. § 271(b), "liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement."  *Sanofi, LLC v. Watson Labs. Inc.*, 875 F.3d 636, 643 (Fed. Cir. 2017) (internal citation omitted).  As explained in Section IV.A above, Adeia plausibly pleads neither.

Adeia's pre-suit inducement claims also fail for two additional, independent reasons: (1) the Complaint does not allege facts supporting a specific intent to induce, and (2) it does not plausibly allege any underlying act of direct infringement.

Specific intent "requires more than just intent to cause the acts that produce direct infringement;" the inducer must also "have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  Here, the Complaint alleges no facts demonstrating such affirmative intent.  Instead, Adeia relies on boilerplate assertions that "AMD's agreements, directives, advertising, sales, design, development, and/or technical materials" purportedly "contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use" the accused products. *See, e.g.*, Dkt. 1 at ¶ 98.  But these allegations merely describe "ordinary acts incident to product

distribution, such as offering customers technical support or product updates." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005); *see also Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) (holding that "generalized allegations that [defendant] induced others to infringe the Asserted Patents through its marketing and sales tactics are … insufficient").  Stripped of these conclusory allegations directed at routine business practices, the Complaint does not identify any agreement, directive, advertisement, sale, design, development, or technical specification that plausibly demonstrates a specific intent to cause infringement of any claim limitation at issue.

Adeia's inducement claims also fail because the Complaint does not plausibly allege an underlying act of direct infringement, as discussed below in Section IV.C.  Under this Court's precedent, "there can be no inducement or contributory infringement without an underlying act of direct infringement." *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1:14-cv-134-LY, 2015 WL 3513151, at *3 (W.D. Tex. Mar. 24, 2015).  Accordingly, Adeia's claims of pre-suit induced infringement for the Asserted Patents should be dismissed.

## C.    The Court Should Dismiss Adeia's Direct Infringement Claims

This Court recognized that "complex technologies often require more detailed allegations." *Palisade*, No. 7-24-cv-00262, Dkt. 55 at 3.  Adeia's direct infringement claims, related to complex semiconductor technology, fall far short of the *Iqbal/Twombly* standard.  The Complaint does not allege facts supporting a plausible inference that AMD's accused products or their manufacturing processes meet all limitations of any asserted claim.  Further, for the asserted Method Patents, the Complaint does not plausibly allege that each method step is performed by or attributable to AMD.

### 1.    Adeia Fails to Map Structural Elements of the System Patents to Any Accused Product

Adeia's direct infringement allegations for the asserted System Patents improperly rely on

"conclusory allegations" without "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vervain*, 2022 WL 23469, at *1-2. "[A] mere conclusory statement" is insufficient without "accompanying factual allegations." *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). Specifically, Adeia's Complaint fails to "map the claim elements to any specific feature of the accused products." *Palisade*, No. 7-24-cv-00262, Dkt. 55 at 4; *see also Soar Tools*, 2021 WL 3030066 at *4 (holding that a "court should dismiss a patent-infringement claim where the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation").

The Complaint alleges direct infringement of the System Patents through a two-step, conclusory process. First, Adeia parrots the patent language and concludes that the element is met. *See, e.g.*, Dkt. 1 at ¶¶ 80, 82, 84, 86, 88, 90. Second, Adeia inserts unannotated images without identifying what product features correspond to the claim limitations. *Id.* at ¶¶ 81, 83, 85, 87, 89, 91. That approach is insufficient under *Iqbal* and *Twombly* because Adeia never identifies which specific components of AMD's products allegedly satisfy each asserted claim element.

Exemplary allegations for the System Patents are analyzed below. For the '592 Patent, Claim 1, Adeia's allegations for the "an insulating liner …" limitation mimic the claim language:

| '592 Patent, Claim 1 | Adeia's Allegations (Dkt. 1, ¶¶ 253-254) |
|---|---|
| "Claim 1 of the '592 patent recites: 'an insulating liner in contact with an endwall of two or more of the plurality of strained, straight, vertical fin segments, wherein the insulating liner extends from within the substrate to the top of the adjacent gate spacer.'" | "The Accused APN Products made with a 3nm node process comprise this element.<br><br>Analysis of the AMD EPYC™ 9645 product show it comprises an insulating liner in contact with an endwall of two or more of the plurality of vertical fin segments, wherein the insulating liner extends from within the substrate to the top of the adjacent gate spacer." |

| | |
|---|---|
| (Dkt. 1, ¶ 253). |  |

These allegations are plainly deficient.  Adeia alleges that the claim limitation is satisfied by nearly verbatim repetition of the claim language itself, without pleading any supporting facts. The inclusion of an unannotated image in ¶ 254 does not cure this defect because Adeia fails to identify where—if anywhere—the claimed structural elements appear in the image, including the "insulating liner," the "endwall of two or more of the plurality of strained, straight, vertical fin segments," the "substrate," and "the top of the adjacent gate spacer."  The problem does not stop here.  The Complaint relies on the same unannotated image to purportedly satisfy five other limitations of Claim 1, again without identifying any component within the image that allegedly corresponds to the recited elements.  *See* Dkt. 1 at ¶¶ 246, 248, 250, 252, 256.  Such vague and conclusory allegations do not fulfill Adeia's obligation to "give the defendant[] notice of what activity is being accused of infringement."  *Palisade*, No. 7-24-cv-00262, Dkt. 55 at 2.  Adeia's allegations for the remaining '592 Patent limitations also fail to provide mapping between the accused products and the asserted claim language.  *See* Dkt. 1 at ¶¶ 243-252, 255-256.

Adeia relies on similarly conclusory allegations for the '010 Patent:

| '010 Patent, Claim 1 | Adeia's Allegations (Dkt. 1, ¶¶ 151-152) |
|---|---|
| "Claim 1 of the '010 patent recites: 'and wherein the first processor core is electrically connected to the first cache through at least one of the plurality of directly bonded metal contact pads disposed within the overlapping area.'" | "The AMD HB Products comprise this element.<br><br>The AMD MI300A product comprises the first processor core electrically connected to the first cache through at least one of the plurality of directly bonded metal contact pads disposed within the overlapping area." |

(Dkt. 1 ¶ 151).



Again, Adeia asserts that the claim limitation is satisfied by parroting the '010 Patent's claim language and inserting illustrations of the asserted products without any labels or annotations. The Complaint fails to identify where—if at all—the claimed structural elements allegedly appear in the cited images, including which components correspond to the "the first processor core," "the first cache," and "the plurality of directly bonded metal contact pads." *See* Dkt. 1, ¶¶ 151-152. Most critically, Adeia does not identify what it alleges to be "the overlapping area" between the "processor core" and "first cache"—the key requirement recited by this claim limitation. *See id*. The cited images plainly do not show any possible overlap. Adeia's allegations for the other limitations of the '010 Patent are similarly deficient, failing to provide mapping

between the accused products and asserted claim language.  *See id.* at ¶¶ 141-150.

The System Patent limitations discussed above are material.  For example, the "insulating liner…" and "and wherein the first processor core…" limitations were added during the prosecutions of the '592 and '010 Patents to overcome the prior art.  *See* Ex. A (July 16, 2018 Amendment); Ex. B (May 14, 2025 Amendment).[5]  Where "the technology is not simple and the limitations-at-issue are material," a complaint must include more detailed allegations to survive a motion to dismiss.   *Vervain*, 2022 WL 23469, at *5.   Adeia fails to meet the most basic *Twombly/Iqbal* pleading standard, much less this heightened standard for material limitations.

### 2.    Adeia Fails to Plausibly Allege That the Steps of the Method Claims Are Performed by or Attributable to AMD

To state a claim for infringement of a Method Patent, Adeia must plausibly allege that each step of the claimed method is performed by or attributable to a single entity.  *Akamai*, 797 F.3d 1020, 1022 ("Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity.").  Adeia has not done so.  Thus, the Complaint fails to allege that AMD directly infringes any Method Patent.

First, Adeia does not allege that AMD directly performs any of the processes claimed by the Method Patents.  To the contrary, the Complaint acknowledges that AMD does not itself perform the accused semiconductor manufacturing and packaging processes, and instead alleges that third-party foundries and subcontractors perform these processes.  *See* Dkt. 1 at ¶¶ 50-51.

Second, having ruled out performance by AMD, the Complaint also fails to plausibly allege that performance of each method step is attributable to AMD.  Adeia does not identify the entities

---

[5]Exhibits cited herein are attached to the concurrently-filed declaration of Xin-Yi Zhou.  AMD requests the Court take judicial notice of the Asserted Patents' patent file histories as public records.  *See Grecia Est. Holdings LLC v. Meta Platforms, Inc.,* 605 F. Supp. 3d 905, 915 (W.D. Tex. 2022).

purportedly performing each asserted method step, instead referencing a mix of named and unnamed third parties and offering only vague allegations about their ties to AMD or the accused products. *Id*. at ¶ 51 ( "AMD's products are either sorted by the foundry or delivered by the foundry to AMD's assembly, test, mark, and packaging (ATMP) partners or subcontractors located in the Asia-Pacific region who package and test AMD's final semiconductor products."). Adeia then conclusively alleges that AMD "directs and controls" these third parties without pleading any facts supporting such control. *Id.* at ¶¶ 53-60. This threadbare allegation of control merely states a legal conclusion and is insufficient to plausibly plead attribution. *See Iqbal*, 556 U.S. at 678 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The Federal Circuit's holding in *Lyda v. CBS Corp*. is instructive. *See* 838 F.3d 1331. There, the Court affirmed dismissal where the plaintiff alleged that the defendant "controls certain independent contractors who in turn direct and control the 'participation' of unnamed third persons" but failed to plead facts showing that the defendant directed and controlled these third parties. *Id*. at 1340. And "most importantly," the Court found that the plaintiff failed to "allege any relationship between the Defendants and the unnamed third parties … in a way that the actions of these unnamed third parties should be attributed to Defendants." *Id*. Similarly, Adeia alleges a multi-level theory of direction and control without any factual support showing that AMD directs or controls the specific manufacturing and packaging steps claimed by the asserted Method Patents. Although Adeia alleges that AMD's "partners or subcontractors" package and test the accused devices, Adeia pleads no facts suggesting that: (1) AMD directs and controls its AMTP partners, (2) the AMTP partners direct and control the unnamed subcontractors, or (3) AMD has any relationship with the unnamed subcontractors to control their alleged performance of the specific manufacturing and packaging steps at issue. Absent such allegations, Adeia has not

plausibly shown that the alleged performance of the Method Patents is attributable to AMD.

### 3. Adeia Fails to Plead Factual Support for Process-Specific Limitations of Method Claims

Even setting aside Adeia's failure to allege that AMD performs or directs the performance of the accused processes, the Complaint does not plausibly allege that ***any entity*** performs the asserted method claims. Each asserted method claim is directed to a specific manufacturing or packaging process for a semiconductor device, and many of the claim limitations specify process sequences that could not be plausibly inferred from static images of finished products without additional factual allegations. Rather than pleading these necessary facts, Adeia either: (a) ignores these limitations altogether, (b) relies on documentation that contradicts its infringement allegations, or (c) cites irrelevant materials describing unaccused third-party products.

Exemplary allegations from each Method Patent are analyzed below. For Claim 1 of the '378 Patent, Adeia merely parrots the claim language without identifying what features are accused as the claimed "via," "first conductive material," and "first contact structure":

| '378 Patent, Claim 1 | Adeia's Allegations (Dkt. 1, ¶¶ 90-91) |
| --- | --- |
| "Claim 1 of the '378 patent recites: 'wherein said via and said first conductive material are formed before forming said first contact structure.'" (Dkt. 1, ¶ 90). | "The Accused HB Products are made in accordance with this element.<br><br>The AMD EPYC™ 9684X is constructed by forming the via and filling it with first conductive material before forming the corresponding copper contact structure on the filled via."<br><br><br><br>Source: Paul Alcorn, *AMD Unveils More Ryzen 3D Packaging and V-Cache Details at Hot Chips*, TOM'S HARDWARE (Aug. 23, 2021), https://www.tomshardware.com/news/amd-unveils-more-ryzen-3d-packaging-and-v-cache-details-at-hot-chips. |

Claim 1 of the '378 Patent is directed to a specific, ordered manufacturing process,

requiring the formation of a "via" and "conductive material" *before* a "contact structure." Adeia's allegations disregard this sequence. Its sole factual support is a static illustration of a finished AMD product. Adeia does not identify which features in the illustration correspond to the claimed "via," "first conductive material," and "first contact structure." And most critically, this cited image does not—and cannot—support a plausible inference that any feature accused as the "via" was formed and filled with conductive material before the formation of a "contact structure," as the claim requires. Adeia's allegations for the other method steps of the '378 Patent are similarly deficient, ignoring ordered steps and failing to provide mapping between the accused products and asserted claim language. *See id.* at ¶¶ 80-89.

Likewise, for Claim 9 of the '639 Patent, Adeia's allegations fail to identify what features of the accused product correspond to the claim elements:

| '639 Patent, Claim 9 | Adeia's Allegations (Dkt. 1, ¶¶ 217-218) |
|---|---|
| "Claim 9 of the '639 patent recites: '<mark>concurrently forming spacers</mark> on first mandrels corresponding to the first mandrel pattern and second mandrels corresponding to the second mandrel pattern, wherein the first and second mandrels are disposed in the semiconductor region in a same layer above a substrate; and.'" (Dkt. 1, ¶ 217). | "The Accused APN Products made with 5nm and/or 4nm node processes are made in accordance with this element<br><br>Analysis of the AMD Ryzen™ 7600X shows that it is constructed by concurrently forming spacers on first mandrels and second mandrels that is subsequently transferred to a fin pattern in the final product."<br><br> |

Claim 9 of the '639 Patent requires that the "spacer" structures are "*concurrently* formed." Again, Adeia ignores this temporal requirement. Its sole purported factual support consists of two

unlabeled and unannotated images of an AMD product. Adeia not only fails to allege what features in these images correspond to the claimed "first mandrel," "second mandrel," and "spacers," but the cited images also cannot support a plausible inference that the product includes "spacers" that were "***concurrently*** form[ed]," as the claim requires. Adeia's allegations for the other limitations of the '639 Patent are similarly deficient, ignoring ordered steps and failing to provide mapping between the accused products and asserted claim language. *See id.* at ¶¶ 211-216, 219-224.

For Claim 1 of the '226 Patent, Adeia's factual allegations directly contradict its infringement theory:

| '226 Patent, Claim 1 | Adeia's Allegations (Dkt. 1, ¶¶ 116-117, fn. 25) |
|---|---|
| "Claim 1 of the '226 patent recites: '<mark>after directly bonding, thinning</mark> the plurality of singulated integrated device dies.'" (Dkt. 1, ¶ 116). | "The Accused HB Products are made in accordance with this element.<br><br>The AMD MI300A is constructed by, after directly bonding, thinning the plurality of singulated integrated device dies.[25]"<br><br><br><br>Source: Samuel K. Moore, *AMD's Next GPU Is a 3D-Integrated Superchip*, INST. ELEC. & ELECS. ENG'RS (Dec. 6, 2023), https://spectrum.ieee.org/amd-mi300.<br><br>[25] *See also AMD, How It's Built: AMD 3D V-Cache Technology*, YOUTUBE (Mar. 29, 2022), https://www.youtube.com/watch?v=dSCpVhKvmCY (at 03:12–03:46) ("So another thing we can do is—it's called die thinning. <mark>So we're going to take that same Zen 3 die and grind it down to an incredible layer of thinness</mark>. And notice, you can see the relative size; it's much thinner in the vertical dimension or in the z-height. ***And then***, when we <mark>stack 3D V-Cache on top</mark>, the important thing to note is that the overall size of this die—the real Zen 3 die; the original—and this guy; same height."). |

Claim 1 of the '226 Patent requires that packaging steps occur in a specific order, including a requirement that die thinning occur ***after*** direct bonding. Yet Adeia again relies on an illustration of a finished product that cannot demonstrate whether bonding occurred before thinning. Adeia

also cites a YouTube video that contradicts its claim of infringement. As highlighted above, Adeia quotes an excerpt of the YouTube video suggesting that die thinning occurs ***before*** bonding, directly contradicting the claim language. *See* Dkt. 1 at ¶ 117, fn. 25 (stating that "thinning" is performed "[a]nd then" die stacking is performed). Thus, Adeia's Complaint cannot support a plausible inference of infringement. Adeia's allegations for the other limitations of the '639 Patent are also deficient, ignoring ordered steps and failing to provide mapping between the accused products and asserted claim language. *See id.* at ¶¶ 112-115, 118-121.

Adeia's allegations concerning Claim 1 of the '446 Patent are even more deficient because they do not even pertain to AMD's products:

| '446 Patent, Claim 1 | Adeia's Allegations (Dkt. 1, ¶¶ 178-180) |
|---|---|
| "Claim 1 of the '446 patent recites: 'lithographically patterning a photoresist disposed on the cap layer to form a first mandrel pattern consisting of first and second mandrel shapes.'" (Dkt. 1, ¶ 178). | "The Accused APN Products made with 7nm and/or 6nm node processes are made in accordance with this element.<br><br>The Ryzen™ 5 3600X Zen 2 Processor is made using a process that lithographically patterns a photoresist disposed on the cap layer to form a first mandrel pattern consisting of first and second mandrel shapes.<br><br>Below is an exemplary SAQP process flow showing lithographically patterning a photoresist (PR) disposed on the cap layer to form a first mandrel pattern consisting of first and second mandrel shapes."<br><br><br><br>Source: Angélique Ray, et al., *A Spacer-On-Spacer Scheme for Self-Aligned Multiple Patterning and Integration*, Soc'y Photo-Optical Instrumentation Eng'rs (Aug. 11, 2016), https://spie.org/news/6583-a-spacer-on-spacer-scheme-for-self-aligned-multiple-patterning-and-integration. |

Rather than alleging facts tied to AMD, Adeia relies on a graphic from an article authored by the employees of an unrelated entity, the "TEL Technology Center." *See* Dkt. 1, at ¶ 180. The Complaint does not allege any connection between AMD and the cited article, nor does it allege

that AMD or its subcontractors use its described process.  Instead, the Complaint characterizes the article as illustrating "an exemplary SAQP process flow" without alleging that AMD follows this "exemplary" flow.  *Id.*  And the Complaint does not link the cited article to any component or feature of AMD's products.  Absent an allegation that AMD performs the illustrated process flow, Adeia has failed to plead facts supporting a plausible inference that AMD practices the asserted claim limitation.  Adeia's allegations for the other limitations of the '446 Patent are also deficient, some relying on irrelevant third party information and all failing to provide mapping between AMD's products and asserted claim language.  *See id.* at ¶¶ 172-177, 181-190.

The foregoing Method Patent limitations are material.  For example, during prosecution of the '378 Patent, the patentee argued that its new claim (now Claim 1) was patentable because it "recites the via and the first conductive material being formed before forming the first contact structure."  Ex. C (October 13, 2011 Amendment).  The '639 Patent's specification explains the materiality of its "concurrently forming spacers…" limitation: prior art techniques "carry out spacer deposition and etch twice" whereas the claimed method "carr[ies] out spacer deposition and (spacer) etch only once."  '639 Patent at 6:51-56.  Similarly, the '446 Patent's specification distinguishes the claimed method from "conventional photolithography," confirming the materiality of its "lithographically patterning a photoresist…" limitation.  *See* '446 Patent at 3:62-4:12.  The '226 Patent's "after directly bonding, thinning…" limitation is likewise material; its specification emphasizes that thinning after mounting may be advantageous to "enable the stacking of integrated device dies which have arbitrary initial thicknesses."  '226 Patent at 2:44-55.  Despite the materiality of these limitations, Adeia fails to plead facts supporting its infringement allegations.

Adeia cannot salvage its Method Patent allegations by relying on 35 U.S.C. § 271(g).  *See*

Dkt. 1 at ¶¶ 93, 123, 192, 226.  Liability "under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a). . . .  [A] plaintiff must plead facts that plausibly suggest that the accused product or process meets each limitation of the asserted claim or claims."  *Celanese*, 2021 WL 7209494, at *3 (internal citation omitted).  As explained above, Adeia has not made this showing.  Section 271(g) further requires plausible allegations that the accused products were not materially changed by subsequent processes and did not become trivial or nonessential components of a larger product.  *See* 35 U.S.C. § 271(g).  The Complaint merely recites these legal elements without pleading any factual support.  For example, Adeia does not allege where in the multi-level supply chain the accused manufacturing and packaging steps purportedly occur, nor does it allege why downstream fabrication, packaging, and integration steps do not constitute material changes.  *See* Dkt. 1 at ¶¶ 93, 123, 192, 226.  Thus, Adeia's bare recitations of the legal elements of § 271(g) are insufficient to state a plausible claim.

In sum, Adeia's Method Patent allegations lack factual support.  Adeia does not identify which components allegedly correspond to the asserted claim limitations, much less how any manufacturing or packaging process for these components satisfies the required sequence of steps.  Accordingly, Adeia has failed to plausibly plead direct infringement of the Method Patents.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, AMD respectfully requests that the Court dismiss Adeia's Complaint for failing to state a plausible claim for relief.

Dated:  January 8, 2026                    Respectfully submitted,

/s/ Ryan K. Yagura
Ryan K. Yagura (Texas Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt *(Pro Hac Vice)*
California State Bar No. 247738
nwhilt@omm.com
Xin-Yi Zhou (Texas Bar No. 24127916)
vzhou@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000

Darryl J. Adams (Texas Bar No. 00796101)
dadams@sgbfirm.com
**SLAYDEN GRUBERT BEARD LLP**
410 Congress Avenue, Suite 1650
Austin, TX 787001
Telephone; 512-402-3562

***Attorneys for Defendant Advanced Micro Devices, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 8, 2026.  Any other counsel of record will be served by facsimile transmission, e-mail and/or first class mail.

*/s/ Ryan K. Yagura*
Ryan K. Yagura